WHITAKER and others *against* GAVIT and others :

#### IN ERROR.

*A,* having a claim against *B*, for having willfully and maliciously mutilated the model of a propeller belonging to *A*, and being insolvent, made an assignment for the benefit of his creditors, under the statute of 1828. In making this assignment, it was intended and agreed by *A*, that such claim against *B* should be included therein and conveyed to the assignee, as well as the property specified, but through the mistake of the draftsman, it was omitted. On a bill in chancery brought by *C*, a purchaser of such claim from the assignee, praying for the reformation of the assignment according to the intention of *A*, and other relief, it was held, that such claim not having been included in the assignment, there was no assignment thereof in writing, pursuant to the statute, and the court of probate had no jurisdiction over it; and consequently, *C* was not entitled to the relief sought. [One judge dissenting.]

If, however, such claim had been specified in the assignment, it would have passed to the assignee, being in its nature assignable.

THIS was a bill in chancery, brought by *Edwin Gavit* and others against *Horace Whitaker, Jedediah Williams* and *George W. Clark*, praying the court to establish an assignment made by *Clark* in trust for his creditors, and give the plaintiffs the benefit of it, and also enjoin *Whitaker* against the further prosecution of a writ of *scire-facias* which he had brought against *Williams*.

The case stated in the bill was as follows. *Clark,* having a claim against *Williams* for willfully and maliciously mutilating a certain model of a propeller which he was building for *Williams*, with intent to interrupt him in his business, and having become insolvent, conveyed to *Edward Chappell*, in trust for the benefit of all his creditors, pursuant to the statute of 1828, the timber and other materials for ship building in his ship-yard, and also the balances due to him from *Williams*, and certain other persons, for and on account of the propeller, and other vessels built for them. In making the assignment, it was designed, intended and agreed, by *Clark*, that his claim against *Williams* for the damages sustained by the mutilation of the model, should be included therein, and conveyed to the assignee, as well as the balance due him for the construction of the propeller; but from the particulars not having been explained to and understood by the draftsman

of the assignment, the claim was not so fully described as to be effectually transferred thereby. This assignment was duly lodged in the office of the court of probate, on the day of its date. *Chappell* declined to accept the trust; and thereupon the court of probate appointed *Giles M. Eaton*, trustee under the assignment, who accepted the trust, and gave bonds according to law. This trustee, under the authority and interest vested in him, as such trustee, and by virtue of the orders of the court of probate, and with the assent and approbation of *Clark*, sold to the plaintiffs, at public auction, among other things, all *Clark's* claim upon *Williams*, for the balance due from him, for the construction of the propeller, and also his claim for the damages occasioned by the injury to the model. The plaintiffs having thus become the purchasers of these claims, caused a suit to be instituted against *Williams*, to recover the damages occasioned by the injury to the model, and recovered judgment for 75 dollars, damages, and 40 dollars, 38 cents, costs. The suit was brought in the name of *Clark*, with his understanding and consent, but was instituted and prosecuted by the plaintiffs, as the owners of the claim, at their expense and for their benefit. The defendants had full knowledge of all these facts; but *Whitaker*, designing and contriving to deprive the plaintiffs of the benefit of the judgment which they had obtained, afterwards instituted a suit against *Clark*, by process of foreign attachment, and left a copy with *Williams*, as the debtor of *Clark*, and then brought a *scire-facias* against *Williams*, which is pending.

After a full hearing, the superior court found all the facts stated in the bill to be true, and passed a decree, establishing the plaintiffs' title to the judgment, and enjoining *Whitaker* against interfering with the collection thereof.

The defendants thereupon filed their motion in error, to procure a reversal of that decree; assigning for error, that no title to the claim against *Williams*, for the mutilation of the model, ever vested in the assignee, such claim never having been assigned to him, by any instrument in writing; and because the claim was a mere naked right to sue for a tort, and was not assignable, either in law or equity.

*E. Perkins*, for the plaintiffs in error, contended, 1. That an assignee for the benefit of creditors, under the statute of

1828 against fraudulent conveyances, can derive a title to the property only through an instrument of assignment *in writing. Stat.* 301. *s.* 1. (ed. 1838.) This is the foundation of all proceedings under the statute. Without it, the court of probate has no jurisdiction over the property. The intent and agreement of the debtor to execute such an instrument, not carried into effect, will not supply the want of it. That this is true *at law*, will not be denied. It is equally true *in equity.* Are not the positive provisions of a statute binding upon a court of equity, as well as upon a court of law? If equity can supply the want of such an instrument as to any part of the property, it may as to the whole ; and the consequence will be, that a parol assignment, or an intent and agreement to assign, is regarded in equity as a compliance with the statute ; and this will amount to a repeal of this part of the statute—so far as the jurisdiction of a court of equity extends.

2. That the claim of *Clark* against *Williams* for the willful and malicious mutilation of the model, was a mere naked right to sue for a tort ; and if it were expressly included in the assignment, it would not pass to the assignee. By the common law, neither possibilities nor rights of entry, nor things in action, nor causes of suit, could be assigned. *Co. Litt.* 214. *a.* 2 *Bla. Com.* 442. *Scholey* v. *Daniel,* 2 *Bos. & Pul.* 541. 1 *Sw. Dig.* 170. The object of this rule of the common law, is, to prevent champerty and maintenance ; and courts of equity will not, any more than courts of law, uphold an assignment which involves such offensive ingredients. 2 *Sto. Eq.* 312. *Harrington* v. *Long,* 2 *Mylne & Keene* 592. This claim would not vest in the assignee, under the bankrupt law. *Bird* v. *Hempsted,* 3 *Day* 272.

3. That this case presents no features, which will induce a court of chancery to extend its jurisdiction beyond its well defined limits. The aid of this court is sought to secure to the plaintiffs the profits of a speculation in the malicious feelings and quarrels of neighbours.

*Strong* and *Rockwell*, for the defendants in error, contended, 1. That an assignment under the statute of 1828, may be reformed, by a court of equity, as well as any other instrument. It is said the statute requires the assignment to be

*in writing.* So another statute requires a deed of land to be in writing ; but if there is a mistake in drawing it—in the description of the premises, or in any other material part—is it not the daily practice of a court of equity to correct that mistake ? If a conveyance from *A* to *B* directly, may be rectified, why may not one from *A* to *C*, for the benefit of *B*, be rectified ? Assignments under the statute of 1828 stand indeed on higher ground, and ought to be more favoured, than ordinary conveyances from one party to another. They are made to disinterested trustees, who are required to give bonds for the faithful performance of their duties, and whose proceedings are subject to the controul of the court of probate.

2. That the claim in question was assignable under the statute. And here we are relieved from any discussion about the common law rule as to the assignability of choses in action ; because the statute specifies " choses in action" among the subjects of the assignment. *Stat.* 300. *s.* 1. That this claim was a chose in action, is unquestionable. *Clark's* property had been injured ; and he was entitled to an indemnity ; which he had a right to recover by suit. This was a *thing in action*, as much as though it had originated in a contract. " Damages due for breach of covenant, for the detention of chattels *or for torts*, are included under this general head." 2 *Kent's Com.* 251. If *Clark* had died, after his right of action had accrued and before the assignment, the claim would have survived to his personal representative. *Griswold* v. *Brown*, 1 *Day* 180.

3. That these points being established, the plaintiffs were entitled to the relief sought, and the decree passed by the court below, was a proper one.

ELLSWORTH, J. The first error complained of, is, that the court below decided, that the plaintiffs had an equitable title to the chose in question. In this, we think, there is error. The plaintiffs pretend to no title, except one from *Giles M. Eaton*, a trustee, substituted, by the court of probate, for *Edward Chappel.* From whence did *Eaton* derive his title, if the chose in action was not, as confessedly it was not, in the assignment ? the " design, intention and agreement of *Clark*," (though with whom it is not said,) to the contrary,

*New-London, July, 1847.*

Whitaker
*v.*
Gavit.

notwithstanding. Since *Clark* has not, by any general or particular descriptive language, included this claim in his assignment, it is not assigned ; that is all. The court cannot make an assignment for him, whether the omission is attributable to design or mistake. Besides, an assignment under the statute of 1828, must be *in writing*, and *recorded*. All the property, which it is claimed passes by it, must be embraced within the description used in it. The description may be very general ; but it must be there, and speak for itself. A parol assignment, and much less one only *intended*, is no assignment at all, under the statute, and gives no jurisdiction to the probate court. Property not found in the assignment cannot, properly, be inventoried, or appraised ; nor is it covered by the bond executed to the judge of probate. If it is, how can the surety know the extent of his liability, or the court know when the trustee has closed his trust ?

Other questions have been made, but they become unimportant, for the reasons already assigned.

We will remark, however, that it is by no means certain, any mistake in *fact* has intervened. And if not, then according to the cases of *Hunt* v. *Rousmanier*, 1 *Pet*. 1. and 8 *Wheat*. 211. *Wheaton* v. *Wheaton*, 9 *Conn. R.* 96. The *Chesnut-Hill Resorvoir Co.* v. *Chase*, 14 *Conn. R.* 124. and cases cited in 1 *Story's Eq.* 124. a court of equity cannot interfere, and especially in behalf of a statute trustee against an attaching creditor.

The defendants deny that the claim of *Clark* against *Williams*, is, before judgment, of the nature of property, and capable of assignment. They say, it is a mere right of personal redress for a tort, and that to buy it is champerty and maintenance. It is certain that a right of action for a personal injury, as for an assault and battery, slander, malicious suit &c. is not assignable even in equity ; nor would a right of action for an injury to personal property pass to an executor or administrator, except by the statute of 4 *Edw*. 3. or in this state, by the same statute, or that of 1836. *Stat*. 75. (ed. 1838.) Modern authorities, it appears to us, go far towards deciding, that this claim might have been assigned, had it been specified in the assignment. They hold, that a right of action for an injury to property growing out of con-

tract, if not for all injuries to property, will pass to an assignee in bankruptcy.   In the case of *Comegys* v. *Vasse*, 1 *Pet.* 213. where this subject is fully discussed, *Story*, J. in giving the opinion of the court, says: " In general, it may be affirmed, that mere personal torts, which die with the party and do not survive to his personal representative, are not capable of passing by assignment, and that vested rights *ad rem* and *in re*—possibilities coupled with an interest, and claims growing out of and adhering to property, may pass by assignment."   In *Smith* v. *Coffin*, 2 *H. Bla.*, 451. Lord Ch. J. *Eyre* says, " every beneficial interest, which the bankrupt has, shall be disposed of, for the benefit of his creditors."   And *Buller*, J., in the same case, says—" The object of the statute of bankruptcy is, that every thing belonging to the bankrupt, that can be turned into profit, shall pass by the assignees for the benefit of creditors."   So in *Wright* v. *Fairfield*, 2 *B. & Adol.* 727. (22 *E. C. L.* 175.)   Lord *Tenterden* says, " that the object of the statute 6 *Geo.* 4. *ch.* 16. was, to give the assignment, for the benefit of the creditors, every beneficial matter belonging to the estate ;" and it was held by the court, that a right to sue for a breach of a contract to supply stones, passed to the assignees, though the damages were unliquidated.   Lord *Tenterden* considered that the right of action was part of the bankrupt's estate.   In *Drake* v. *Beckham*, 11 *Mee. & Wels.* 316.   Lord *Denman*, Ch. J., in giving the opinion of the court, says : " There is no doubt, that a right of action for an injury to the body or feelings of a trader arising from a tort, independent of contract, does not pass to his assignees, *e. g.* for an assault and battery, or slander, or the seduction of a child or servant.   And the same may be said of some personal injuries arising out of breaches of contract, such as contracts to cure or marry ; and if in the cases last supposed, a consequential damage to the personal estate follows from an injury to the person, that may be so dependent upon, and inseparable from, the personal injury, which is the primary cause of action, that no right to maintain a separate action in respect of such consequential damage, will pass to the assignees of a bankrupt.   In all those cases, the primary cause of action, if of a nature, properly speaking, personal, and the right to maintain it, would die with the bankrupt.   In the present case," he continues, " although the contract was for the

personal skill and labour of the bankrupt, the breach of that contract does not appear to cause him any other injury than the diminution of his personal estate. In the cases referred to, the injury (if any) to the personal estate, is the consequence of an injury to the person: in this case, the injury to the person (if any) is the consequence of an injury to the personal estate. The injury to the personal estate is, therefore, in this case, the primary and substantial cause of action ; and we think, according to the authorities, such right of action would pass to the assignees, as part of the personal estate, it being a matter belonging to the bankrupt, whereof profit may be made." In *Howard* v. *Crowther*, 8 *Mee. & Wels.* 601. 604. Lord *Abinger* says: " Nothing is more clear, than that a right of action for an injury to the property of the bankrupt, will pass to his assignees ; but it is otherwise as to an injury to his personal comfort. Assignees are not to make a profit of a man's wounded feelings. Causes of action, therefore, which are purely personal, do not pass to the assignees ; but the right to sue remains with the bankrupt." See further *Sullivan*, asssignee, v. *Bridge*, 1 *Mass. R.* 511. *Shoemaker* & al. v. *Keeley*, 1 *Yeates* 245. 2 *Dall.* 213. 9 *Ser. & Raw.* 244. 4 *Ser. & Raw.* 19. 28. 13 *Ser. & Raw.* 54. *Eden on Bank.* 235. s. 10.

As the decision of the court does not rest on this question, we shall not further pursue it. We have a strong impression, that the chose in action, which is here the subject of controversy, would have passed, had it been in the assignment.

We would further remark, if the question of jurisdiction can properly come before us, under the assignment of errors, we do not perceive why the plaintiffs have not adequate relief at law. They can successfully defend in the *scire-facias ;* for they have an equitable title to this chose in action, as was decided, in the case of *Barber* v. *The Hartford Bank*, 9 *Conn. R.* 407.

We advise that there is manifest error.

In this opinion, CHURCH, Ch. J. and STORRS and HINMAN, Js., concurred.

WAITE, J. The question presented, is, whether the decree is erroneous, upon either of the grounds assigned in the motion in error. By a rule often repeated and enforced, no

other causes of error can be considered or regarded, by this

court, than those specially assigned.    *Reg. gen.* 6 *Conn. R.* 327.    *Bissell,* exr. v. *Spencer,* 8 *Conn. R.* 504.    *Reg. gen.* 14 *Conn. R.* 140.    *Reynolds* v. *Reynolds,* 15 *Conn. R.* 98.

The only enquiry then, is, whether the claim against *Williams* for the mutilation of the model, was assigned for the benefit of the creditors of *Clark ;* and if it was, whether the plaintiffs' equitable title must fail, because it was not assigned to the trustee *in writing*.

1. Was the claim assignable ?    Our statute, relating to assignments by insolvent debtors, for the benefit of their creditors, expressly authorises the assignment of *choses in action*. And such assignments are to be liberally and beneficially expounded.

The rule upon this subject, I understand to be this : A claim for a mere tort done to the person, as for an assault and battery, or for slander, is not assignable under the insolvent or bankrupt laws, because such rights are not considered in law as the subject of property.    But for an injury done to *property*, by which it has become deteriorated, and the fund for the payment of debts diminished, the rule is different.    1 *Chitt. Pl.* 71.    Thus, if the property of an insolvent debtor has been wrongfully taken from him, and converted to the use of the wrong-doer, the debtor may assign that claim for the benefit of his creditors, and the assignee may sue and recover for the same.    In such case, it makes no difference whether the form of the action be trespass or trover.    So too, a claim for an injury done to property, as well as for a conversion of the same, is assignable.

In the case of *Hancock* v. *Caffyn,* Chief Justice *Tindal* said, " undoubtedly there is a large class of actions, in which, though an action lies for the bankrupt, the right does not pass to the assignees, as for injuries to the person, or reputation ; but we should not give due effect to the statute, if we were to hold, that a right did not pass arising out of an injury, which has lessened the amount of the fund belonging to the creditors."    " Where the statute directs an assignment of all the bankrupt's present personal estate, how can we except a right, in respect of which, the fund accruing to the creditors, would receive compensation to the extent to which the property of the bankrupt has been diminished ?    The case of

executors affords a close analogy : they cannot sue for an injury to the person of the testator ; but, in respect to an injury to the property, which would have formed part of the assets, they are entitled to recover." 8 *Bing.* 358. (21 *E. C. L.* 318.)

The doctrine in relation to the rights of executors and administrators, has been fully recognized in this state ; and it has accordingly been holden, that an administrator can sustain an action of trespass against a person, who entered upon the lands of the deceased, in his life time, and burnt his mills. *Griswold* v. *Brown,* 1 *Day,* 180.

If, as said by Chief Justice *Tindal,* there is a close analogy between the title of an assignee under the insolvent laws and that of an administrator, it would seem to follow, that an assignment might be made to the former of a claim for damages arising from a tort done to property.

As the claim against *Williams* was of that character, it was competent for *Clark,* the owner, to assign it to a trustee, for the benefit of his creditors. And although such an assignment may not be sufficient to authorise the assignee to sue in his own name, yet it will confer an equitable title, which a court of chancery will protect, in the same manner as his title to any other chose in action, acquired by assignment. "Every such assignment," says Judge *Story,* "is considered in equity, as, in its nature, amounting to a declaration of trust, and to an agreement to permit the assignee to make use of the name of the assignor, in order to reduce the property into possession." 2 *Sto. Eq. sect.* 1040.

2. If then the claim was assignable, the only remaining question is, whether upon the facts found by the court below, the plaintiffs' title is so defective, by reason of the omission in the written assignment of *Clark,* that it cannot be sustained in a court of equity.

It is said, that the statute relating to assignments to trustees for the benefit of creditors, requires them to be in writing. And the statute in relation to transfers of real estate, requires all grants, bargains and mortgages to be in writing, and attested by two witnesses. *Stat.* 390 (ed. 1838.) And yet it is the constant practice of courts of equity, to correct mistakes in them, not only as against the makers, but against all persons claiming subsequently under them, with knowledge

of the mistakes. Thus, in a very recent case, this court said,

"that a mistake, clearly proved, in the draft of a deed, and
even in its execution, may be corrected in a court of chan-
cery, has been too often decided to be doubted." " The mis-
take of a scrivener in the draft of an instrument, is as much
a ground of relief, as fraud." And a court of equity " will
not only grant relief against the party himself, and his heirs,
but against his assignee and creditors, if he become bankrupt."
*Holabird* v. *Burr,* 17 *Conn. R.* 559.

It is however said, that this doctrine does not apply to
deeds of assignment, by insolvent debtors, under our insol-
vent laws. But this precise question, and for aught that I
can see, this precise case, has been recently considered and
determined, by this court. *Chamberlain* v. *Thompson,* 10
*Conn. R.* 244. There *Merwin,* being seised in fee of certain
lands, subject to a mortgage, agreed with the defendant to
convey to him in fee simple, all his interest in those lands, for
the benefit of his creditors, and accordingly executed and de-
livered to him a deed, which, by the mistake of the scrivener,
conveyed only a life estate, the words of inheritance being
omitted. The plaintiff having knowledge of the mistake,
afterwards attached the equity of redemption, and caused it
to be set off upon his executions, and then brought his bill
against the defendant. One question involved in the case,
was, whether such a deed could be corrected ; and this court,
after full consideration, held, that it might, and that the plain-
tiff could take nothing by the levy of his executions. The
judge who delivered the opinion of the court, said: " That it is
not only in the power, but that it is the peculiar province, of
a court of chancery to correct mistakes in a deed, and mis-
takes of this character too ; and that it is too well settled to
admit of a question, or to require that authorities should be
cited in proof. It has not indeed been denied in the argu-
ment. Is there any thing *in the character in which the par-*
*ties stand before the court,* that should prevent the exercise
of this very ordinary jurisdiction of a court of chancery ?"
And after a careful examination of the subject, the court held,
that there was no difference between the situation of the
parties to that deed and that of parties to any other convey-
ance ; and that the deed, which in fact conveyed but a life-

estate, should be made to operate according to the intent of the parties, and convey a fee.

I have been unable to distinguish that case from the present. There, as in this case, was a conveyance to a trustee for the benefit of creditors. There, as in this case, was a mistake of the draftsman, by which the deed was made to convey less than the parties had intended and agreed that it should. In the one case, the deed, which the parties had agreed should convey an estate in fee simple, conveyed but an estate for life. In the other, the deed, which the parties *had agreed and intended* should convey two claims against a certain individual, conveyed but one. In the one case, the controversy was between the trustee and an attaching creditor, and in the other, between purchasers under the trustee and an attaching creditor. In the former case, this court held, that the deed might be corrected and made conformable to the intent and agreement of the parties; and the same doctrine was recognised in the other case. And how the latter decision can be reversed, without overruling the former, I have yet to learn.

But it is here said, that a conveyance in writing is essentially necessary to give the court of probate the jurisdiction conferred by our statute. Were this an application to that court for some order in relation to this claim, there might be some weight in the objection. But the application is, not to that court, but to a court of chancery, for the purpose of having an equitable title, acquired by purchase, converted into a legal one, so as to be made available in a court of law. The plaintiffs claim no title from or under the court of probate. The object of the statute relating to assignments by insolvent debtors, was merely to regulate the conduct of trustees in the execution of their trusts, and prevent those abuses, which had sometimes been practiced. The statute does indeed require such assignments to be in writing; but when so made, they stand upon the same ground as any other conveyances which the law requires to be in writing, as deeds of land. And a court of chancery has the same power to correct mistakes in the former case, as in the latter.

Such is clearly the law, as sanctioned by this court, in the case last cited. It is true, the precise objection urged in this case, that the statute requires a conveyance in writing to confer even an equitable title, and give the court of probate

jurisdiction, was not there made.    But is it to be believed, that
an objection so obvious and apparent, could have escaped the
attention of the very able and learned counsel, employed in
that case, of the judge before whom it was tried on the cir-
cuit, and of all the judges of this court, if there were any
weight in the objection?   The inference would rather seem
to be, that it was not noticed, because it was not deemed of
sufficient importance to merit consideration.

But admitting that the deed of *Clark*, conveyed to the
trustee not even an equitable title to the claim in question,
how then will the case stand?   The trustee is no party to
the present suit ; and we have nothing to do with his title,
except so far as it may be necessary to determine that of the
plaintiffs in the original bill.

Now, the bill states, and these facts are found by the court,
that the trustee, *with the assent and approbation of Clark*, sold
at public auction this very claim to these plaintiffs ; and they,
having thus become the purchasers, caused a suit to be insti-
tuted and prosecuted to final judgment, in the name of *Clark,
and with his understanding and consent,* as the *owners* of that
claim, at their expense, and for their benefit.   If then the
trustee had himself no title, why did he not confer upon
the plaintiffs a perfectly good equitable title, when he sold it,
*with the knowledge and consent* of *Clark*, for the purpose of
paying his debts, and when that sale was virtually ratified by
*Clark*, by suffering them to prosecute it in his name, as the
owners, at great expense, and with full knowledge of all the
facts?   In doing all this, he was but carrying out his original
intention and *agreement*.

The sale to the plaintiffs was not made in trust ; and there-
fore, neither the statute, nor the common law, required it to
be in writing.   The case, therefore, stands upon much higher
ground than it would, were the trustee the plaintiff, seeking
to establish his title.

" It is clearly established," says Judge *Story*, " that if the
true owner of property stands by, and knowingly suffers a
stranger to sell the same, in his own name, as his own prop-
erty, without objection, the sale will be valid against the true
owner.   For under such circumstances, his silence and con-
cealment of his title, are treated as equivalent to an affirma-
tive, that he has no adverse title to the property : and it

would be a gross fraud upon the purchaser, to allow the true owner thus to delude him into the purchase, and afterwards defeat the supposed rights acquired under it." *Story* on *Agency, s.* 91.

Here, if *Clark*, at the time of the sale, were the true owner, upon every principle of justice and equity, his conduct in relation to that sale, must forever preclude him from asserting his title. But *Whitaker* stands in no better situation. The case finds, that he had knowledge of all these facts ; that he assisted *Williams* in the defence of the suit, which the plaintiffs brought against him ; and after that defence had failed, and the suit had passed into judgment, he then turns round and attaches the debt against *Williams* as one due to *Clark*, and seeks to appropriate it to his own use. If, in equity, there was no debt due to *Clark*, then he acquired no lien, by virtue of his attachment as against the plaintiffs. For being chargeable with knowledge of all the facts respecting the equitable title of the plaintiffs, he can succeed only to the rights of *Clark ;* and if the latter, by reason of his conduct, in relation to the sale to the plaintiffs, would be precluded from appropriating the judgment against *Williams* to his own use, so must *Whitaker* be. It seems to me, that to allow him, under such circumstances, to prevail as against these plaintiffs, will be, in the language of Judge *Story*, to sanction a gross fraud upon their rights.

It might perhaps be said, that if such be the situation of the case, the plaintiffs have adequate remedy at law, and therefore, cannot sustain their suit in chancery. How that question may be, it is unnecessary, and would be improper, for us to determine, because it is not involved in the present issue. Under our rule, the defendants in error have not been called upon to answer any such claim, and have not done it. Upon that question they have had no day in court.

The claim made is, that the decree is erroneous, because the claim, in its character, was not assignable ; and because it was not in fact assigned by *Clark*, in writing. Upon these questions alone have they been heard ; and upon them must the case be determined. And from the best examination which I have been able to give this case, my mind is led to the conclusion, that the plaintiffs in error have shown no

sufficient reason for setting aside the decree. The claim, in my judgment, was assignable, in the same manner as any *other chose in action;* and the defendants in error acquired a good equitable title to the judgment against *Williams,* both under the deed of assignment from *Clark,* and by virtue of the sale made to them by the trustee; and that neither *Clark* nor *Whitaker* ought to be allowed to deprive them of the benefit of that judgment, which they have obtained honestly, and at great expense.

Judgment reversed.