# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 15, 2013

No. 12-50675
Summary Calendar

Lyle W. Cayce
Clerk

HYDE & HYDE, INCORPORATED; TIMOTHY HYDE,

Plaintiffs–Appellants

v.

MOUNT FRANKLIN FOODS, L.L.C.; SUNRISE CANDY, L.L.C.;
ELAMEX USA CORPORATION,

Defendants–Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:11-cv-00008-FM

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

This case centers on a dispute over packaging equipment that Appellants leased and subsequently transferred to a third party. The equipment was then re-transferred multiple times before being returned years later. Appellants brought suit alleging, *inter alia*, conversion. The district court granted summary judgment against Appellants, who now appeal. For the reasons discussed below,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-50675

we deny Appellants' motion to expand the record and affirm the district court's summary judgment determination.

## I

The facts of this case are mostly undisputed. In 2002, General Electric Capital ("GE Capital"), the original owner of the packaging equipment at issue, leased the equipment to Hyde & Hyde, Inc., with Timothy Hyde (collectively "Appellants") personally guaranteeing the lease. In 2005, with GE Capital's consent, Appellants transferred their interest in the lease to Sweet Ventures, LLC ("Sweet Ventures"), while still remaining liable to GE Capital for any underlying breach of the lease agreement. In 2007, Sweet Ventures reorganized as Simply Goodies, LLP ("Simply Goodies") and took possession of the packaging equipment without the approval of GE Capital or Appellants. Bridge Finance Group ("Bridge") financed the reorganization and took a security interest in Simply Goodies' assets.

When Simply Goodies breached its obligations to Bridge, Bridge foreclosed on Simply Goodies' assets. Bridge sold Simply Goodies' assets to a separate company, Sunrise, and directed Simply Goodies to deliver its assets to Sunrise. Simply Goodies included GE Capital's equipment in its asset delivery, and Sunrise took possession of it. There remains a dispute whether Sunrise knew it was taking possession of property subject to Appellants' lease, but the dispute is immaterial to the issues presented here. After Sunrise took possession of the equipment, the equipment was transferred to Mexico.

In 2009, GE Capital brought a suit for default and breach of contract against Appellants, Sweet Ventures, and Sunrise, among others. In December 2010, GE Capital and Appellants entered into a settlement agreement ("2010 settlement") to resolve the case. The 2010 settlement included a quitclaim deed to the equipment and assigned to Appellants "all of [GE Capital's] rights and interests, if any, in the Equipment."

2

No. 12-50675

Appellants thereafter filed suit, alleging conversion and fraud against Appellees. As part of their case-in-chief, Appellants offered a document intended to clarify the scope of the 2010 settlement. The parties cross-moved for summary judgment, and the district court granted summary judgment in Appellees' favor. Appellants filed a timely appeal and moved to expand the record on appeal to include yet another supplement to the 2010 settlement. This second document purports to amend the 2010 settlement, whereas the first document merely sought to clarify the settlement. This opinion addresses both Appellants' motion to expand the record and the merits of the appeal.

## II

The district court entered final judgment on April 30, 2012 and denied Appellants' motion for reconsideration on June 4, 2012. Appellants filed their notice of appeal on July 5, 2012. Therefore, we have jurisdiction pursuant to 28 U.S.C. § 1291.

## III

In addition to appealing the district court's grant of summary judgment, Appellants have moved to expand the record on appeal to include a new agreement between Appellants and GE Capital that attempts to resolve the shortcomings in the 2010 settlement identified by the district court. Unlike Appellants' prior attempt, which was styled as a mere clarification, this document purports to amend the 2010 settlement to specifically include an assignment of claims. The amendment was executed after the district court granted summary judgment and after the district court denied Appellants' motion for reconsideration.[1] As such, the amendment did not constitute a part of the record on appeal. It does, however, constitute part of Appellants' case-in-

---

[1] In fact, the amendment was executed the same day as the district court's denial of the motion for reconsideration.

No. 12-50675

chief in a second, separate lawsuit undertaken in part to re-litigate issues raised before the district court.

Rule 10(e)(2)(C) of the Federal Rules of Appellate Procedure allows the Court to supplement the record on appeal "[i]f anything material to either party is omitted from or misstated in the record by error or accident[.]"  Fed. R. App. P. 10(e)(2)(C).  The courts of appeal rarely exercise this authority, and the determination to do so is made on a case-by-case basis.  *See Dickerson v. Alabama*, 667 F.2d 1364, 1367 (11th Cir. 1982).  Attempts to supplement the record with new evidence that was not before the district court and that is part of a related, pending case are especially disfavored.  *Karaha Bodas Co. v. Perusahaan Perambangan Minyak Dan Gas Bumi Negara*, No. 02-20042, 2003 WL 21027134, at *3 (5th Cir. Mar. 5, 2003) (per curiam) (unpublished); *Kemlon Prods & Dev. Co. v. United States*, 646 F.2d 223, 224 (5th Cir. 1981).

We deny Appellants' motion because the document offered was not omitted from the record by error or accident, as Rule 10(e)(2) requires.  The amendment was executed after the district court issued its final determination, and it amounts to a new factual basis for pursuing a claim already decided by the district court based on the record then before it.  Moreover, this document is part of the record in a related, pending case.  The Court of Appeals is not the venue for instituting parallel proceedings or attempting to re-litigate claims based on a newly-executed agreement.  Therefore, Appellants' motion is denied.

**IV**

"We review a grant of summary judgment de novo, applying the same standard as the district court."  *Nickell v. Beau View of Biloxi, L.L.C.*, 636 F.3d 752, 754 (5th Cir. 2011).  Summary judgment is proper only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine if the summary judgment evidence is such that a reasonable jury could return a verdict for the

No. 12-50675

non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, Appellants challenge the district court's grant of summary judgment in Appellee's favor on their conversion claim. This argument takes two forms: first, Appellants argue that they presented a triable conversion claim on the basis of the assignment of rights received from GE Capital in the 2010 settlement; and second, Appellants claim that they presented a triable conversion claim regardless of whether the 2010 settlement assigned GE Capital's cause of action. To facilitate our analysis, we address Appellants' claims in reverse order.

## A

Under Texas law,[2] a conversion is the "unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights[.]" *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). "The plaintiff must prove that: (1) he legally possessed the property or was entitled to it; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff demanded the property's return; and (4) the defendant refused." *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009) (citing *Small v. Small*, 216 S.W.3d 872, 877 (Tex. App.—Beaumont 2007, pet. denied)). Regarding the first prong, in order to recover on a theory of conversion, at the time of the conversion, "one must . . . either have some character of ownership interest in the specific property converted or be in legal

---

[2] According to *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), we must apply the substantive law of the forum state—including choice-of-law rules, which may dictate applying another state's laws. *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 n.2 (5th Cir. 2009). For conversion, the parties agree that Texas law applies, and Texas indeed has the most significant relationship to the conversion alleged since the conduct giving rise to Appellants' claim took place in Texas. *Cf. Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000) (holding that Texas uses the most significant relationship test to decide choice-of-law issues). Therefore, we apply the law of Texas to Appellants' conversion claim.

possession of it or then entitled to its possession." *Mack v. Newton*, 737 F.2d 1343, 1355 (5th Cir. 1984).

Here, Appellants cannot maintain an outright conversion claim because they fail the first element of conversion: possession or the right to it. Appellants cannot satisfy the first prong of the conversion test because, at the relevant times—namely, when Simply Goodies wrongly delivered the equipment to Sunrise and when the equipment was thereafter transferred to Mexico—Appellants had already surrendered both actual possession and their right to possession. They did so through the transfer of their lease to Sweet Ventures in 2005. The transfer of interest to Sweet Ventures meant that Appellants no longer had actual possession of the equipment or the right to possess it when subsequent transfers were made in 2007 and 2008.

In their brief, Appellants make no effort to dispute this unavoidable conclusion. Instead, their brief focuses on inapposite statements of law and intimations regarding what the district court did and did not determine.[3] Since transferring their interest in the lease transferred actual possession and the legal right to possess the packaging equipment, Appellants did not accrue an outright conversion claim when the equipment was subsequently re-transferred. There being no dispute of material fact, Appellees are entitled to judgment as a matter of law on Appellants' outright conversion claim. *See* Fed. R. Civ. P. 56(a).

---

[3] For instance, Appellants insinuate that the district court held that conversion only occurs through a taking, rather than including instances of wrongful possession. The district court made no such pronouncement. Appellants also vaguely suggest that the district court incorrectly stated that only one act of conversion occurred. This is also not the case. *See Hyde & Hyde, Inc. v. Mount Franklin Food, LLC*, No. EP–11–CA–08–FM, 2012 WL 7062626, at *4 (W.D. Tex. Apr. 30, 2012) ("[Appellants] contend that the conversion occurred when Simply Goodies wrongly delivered the equipment to defendant Sunrise *and* when the equipment was subsequently transferred to Mexico." (emphasis added)).

No. 12-50675

## B

Since Appellants did not have actual possession or the right to possession at the time Simply Goodies delivered the equipment to Sunrise or when the equipment was then transferred to Mexico, their conversion claim can only survive summary judgment if they acquired GE Capital's conversion claim when the two companies executed the 2010 settlement, since GE Capital owned the equipment when Simply Goodies wrongly delivered it to Sunrise and when the equipment was then moved to Mexico. While the parties' arguments before the district court relied on Texas law regarding assignment of claims, the district court ultimately analyzed Appellants' assignment claim under Connecticut law since the 2010 settlement contained a choice-of-law provision stating that Connecticut law would control the agreement.

In Texas, under the concept of "party autonomy," the Court "respect[s] the parties' choice of law unless the chosen law has no relation to the parties or the agreement, or their choice would offend the public policy of the state whose laws otherwise ought to apply." *Salazar v. Coastal Corp.*, 928 S.W.2d 162, 166 (Tex. App.—Houston [14th Dist.] 1996, no writ). GE Capital's headquarters are located in Norwalk, Connecticut, thus the chosen law has a relation to the parties. Because this choice of law does not offend the public policies of Texas,[4] we turn to Connecticut law in deciding whether the 2010 settlement assigned to Appellants GE Capital's conversion cause of action.

As the district court correctly noted, this question involves two inquiries: first, whether Connecticut law permits the assignment of a conversion claim; and second, if so, whether the 2010 settlement agreement between Appellants

---

[4] Although not without limit, "Texas law favors free assignment of claims. Indeed, for over 100 years the Texas Legislature has expressly recognized that the sale of claims in Texas is permissible." *Mallios v. Baker*, 11 S.W.3d 157, 172 (Tex. 2000) (Enoch, J., concurring) (emphasis omitted).

7

and GE Capital effected such a transfer. An assignment is a contract between the assignor and assignee that is interpreted according to the rules of contract construction. *Schoonmaker v. Lawrence Brunoli, Inc.*, 828 A.2d 64, 79 (Conn. 2003). Connecticut allows the assignment of causes of action, *see* Conn. Gen. Stat. § 52–118,[5] but only within the limits of public policy, *see Gurski v. Rosenblum & Filan, LLC*, 885 A.2d 164, 167–71 (Conn. 2005). In any event, the parties must intend to assign the cause of action, and the assignment "must be described with such particularity as to render it capable of identification." *Dysart Corp. v. Seaboard Sur. Co.*, 688 A.2d 306, 310 (Conn. 1997).

While Connecticut broadly permits the assignment of contract rights, Connecticut courts closely scrutinize the attempted assignment of tort claims. *Gurski*, 885 A.2d at 167–68. The reluctance to permit the assignment of tort claims stems from well-settled common-law precedent as well as public policy concerns. *Id.* at 168; *Dodd v. Middlesex Mut. Assurance Co.*, 698 A.2d 859, 864 (Conn. 1997). These concerns include discouraging "unscrupulous interlopers and litigious persons . . . from purchasing claims for pain and suffering and prosecuting them in court as assignees[,]" as well as the "too personal . . . nature" of claims for injuries sustained by deceased plaintiffs. *Dodd*, 698 A.2d at 864.

However, these public policy concerns are not implicated by the assignment of tort claims involving property instead of people. When a tort is committed against a person, the injury is fixed to that individual; when a tort involving property occurs, the harm is claimed by whoever owns or has the right to the property at issue. This position finds support in Connecticut Supreme

---

[5] Section 52–118 provides in full: "The assignee and equitable and bona fide owner of any chose in action, not negotiable, may sue thereon in his own name. Such a plaintiff shall allege in his complaint that he is the actual bona fide owner of the chose in action, and set forth when and how he acquired title."

No. 12-50675

Court precedent. In *Dodd*, the Connecticut Supreme Court endorsed a Restatement provision that carves a specific exception for the assignment of tort claims involving property. The Connecticut Supreme Court cited the Restatement for the proposition that, "[a]n assignment of a claim against a third person . . . is illegal and ineffective if the claim is for . . . damages for an injury the gist of which is to the person *rather than to property* . . . ." Restatement (First) of Contracts § 547 (1932) (quoted in *Dodd*, 698 A.2d at 864) (emphasis added). This provision explicitly states that the broad prohibition on assignment of tort claims is specific to personal injury torts, rather than torts involving property. On this basis, we conclude that Connecticut law permits the assignment of conversion claims. We now turn to whether GE Capital in fact assigned its conversion claim to Appellants.

Connecticut case law makes clear that an assignment—whether of a thing, debt, or cause of action—"must be described with such particularity as to render it capable of identification." *Schoonmaker*, 828 A.2d at 79. On this basis alone, it would seem that Appellants' 2010 settlement with GE Capital did not convey GE Capital's conversion claim. The agreement itself makes no reference at all to conveying GE Capital's claims. Admittedly, as Appellants point out, the agreement uses broad language, referring to "all" of GE Capital's rights and interests in the equipment. Connecticut law, however, requires more. It is not enough that the language of an assignment conceptually encompass whatever claim is at issue. Rather, Connecticut law requires specificity. Broad pronouncements do not describe the assignment of claims "with such particularity as to render [them] capable of identification." *Schoonmaker*, 828 A.2d at 79.

Moreover, two 19th-century Connecticut cases discussed by the district court and the parties suggest that assignments of claims require specific, identifiable references to the claims being assigned. The first case, *Whitaker v.*

9

No. 12-50675

*Gavit*, 18 Conn. 522 (1847), involved a claim for damage to a propeller owned by an insolvent individual. The owner of the property assigned property and rights for the benefit of his creditors, but the owner's claim regarding the propeller was deemed not assigned because it was erroneously left out of the assignment. *Whitaker*, 18 Conn. at 526 (Since the assignment did not, "by any general or particular descriptive language, includ[e] this claim . . . [the claim was] not assigned . . . The court cannot make an assignment for [a party], whether the omission is attributable to design or mistake."). As the Supreme Court of Errors of Connecticut—the precursor to the Connecticut Supreme Court—held, the claim was entirely assignable, but the failure to specifically include it in the assignment proved fatal: "[T]his claim might have been assigned, had it been specific in the agreement." *Id.* Tort claims involving property can be assigned, but only if "specified in the agreement." *Id.* at 526.

The second case, *Hartford & Salisbury Ore Co. v. Miller*, 41 Conn. 112 (1874), involved a quitclaim conveyance of land and the attempt to assign a cause of action related to the land. In that case, the court held that quitclaim deeds are capable of assigning claims, but only if the claim is specifically described. *Miller*, 41 Conn. at 129 ("[The landowner] conveyed the land by a quitclaim deed in the ordinary form, but he did not assign or attempt to assign a chose in action. Had he done so, . . . [the plaintiffs] claim in this respect might have been sustained."). While Appellants spend many pages recounting the facts of *Whitaker* and *Miller*, they do not refute the black letter law described therein. Under Connecticut law, an assignment of a cause of action can only be perfected if the cause of action is described with specificity. *Schoonmaker*, 828 A.2d at 79. Having failed to do so in their 2010 settlement, Appellants did not acquire GE Capital's conversion claim.[6] There being no dispute of material fact, Appellees

---

[6] In addition to the amendment proffered in an attempt to overcome summary judgment, *see supra* Part III, Appellants offered a separate document to the district court

No. 12-50675

are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The district court correctly granted summary judgment, and we affirm.

## V

For the reasons discussed above, we hold that no genuine dispute of material fact exists and Appellees are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We also hold that expansion of the record on appeal is not warranted given the facts. Fed. R. App. P. 10(e)(2)(C). Therefore, we DENY Appellants' motion to expand the record and AFFIRM the district court's grant of summary judgment.[7]

---

intended to "clarify" the terms of the 2010 settlement. We hold, as the district court did, that this separate document has no bearing on our interpretation of the 2010 settlement. First, the 2010 settlement contains a merger clause; and Connecticut law observes the "general rule of contract law" that merger clauses likely signify the complete integration of a contract. *Tallmadge Bros., Inc. v. Iroquois Gas Transmission Sys., L.P.*, 746 A.2d 1277, 1291 (Conn. 2000). Second, none of the exceptions to the bar of parol evidence apply: the parties had equal bargaining power, the settlement appears adequately negotiated, no allegations of fraud exist, and the settlement is unambiguous. *See Alstom Power, Inc. v. Balcke–Durr, Inc.*, 849 A.2d 804, 811 (Conn. 2004); *Tallmadge Bros.*, 746 A.2d at 1291–92. Therefore, our summary judgment determination is restricted to the terms of the 2010 settlement.

[7] Because we deny Appellants' motion to expand the record, we DENY Appellees' motion to strike a portion of Appellants' reply brief as moot.

11