THE HARTFORD & SALISBURY ORE COMPANY *vs.* MONROE MILLER.

MONROE MILLER *vs.* THE HARTFORD & SALISBURY ORE COMPANY.

A deed containing covenants of seizin and against incumbrances was made to *B* as trustee of a corporation to be organized, and after its organization he released to the corporation. Held that *B* and not the corporation was the proper party plaintiff in a suit for breach of the covenants.

And held that it did not affect the case that *B* personally paid no part of the consideration. The deed admitted the receipt of it from *B*, and it made no difference that other parties furnished the money; and the damages recovered would be held by *B* as trustee.

If *B* had assigned his right of action to the corporation the latter might under our statute (Gen. Statutes, tit. 1, sec. 64,) have sued for the breach, setting out its title as derived from *B* by assignment; but without such assignment the equitable right of the corporation would not be sufficient.

It is well established law that a deed by a tenant in common of a portion of the common estate by metes and bounds, is inoperative as against his co-tenants.

Ore rights, where severed from the land and owned by tenants in common, are real estate, and the same doctrine applies to them.

*M* owned a tract of land in fee, subject to certain undivided ore rights, of which he owned one-seventh, the other six-sevenths being owned by other parties. He conveyed a portion of the land by metes and bounds, and the one-seventh of his ore rights in the land conveyed. Held that the conveyance of the ore right was inoperative against the other tenants in common of the easement.

Where however the other tenants in common afterwards released to *M* their interest in the one-seventh ore right in the particular land conveyed, it was held that the infirmity of *M*'s conveyance was healed, all parties interested being estopped from denying its validity, and that in a suit against him for breach of the covenant of seizin, only nominal damages could be recovered.

The principle on which such conveyances are held void, is that they tend to

Hartford & Salisbury Ore Co. *v.* Miller.

prejudice the rights of the other co-tenants. Hence if the other co-tenants co-operate in or confirm the conveyance, it is valid.

The rule of damages in breaches of covenant of seizin is generally the consideration paid and interest, because the party has taken nothing by his deed.

But if he takes any benefit from the deed, directly or indirectly, either through its own force or by the acts of others, the value of that benefit is to be considered in estimating the damages.

The rule is the same that determines the damages in any other case of a breach of contract, namely, the actual damages sustained.

*M* by his deed conveyed the land and one-seventh of the ore right; the deed containing the following clause:—"It being understood that the said Holley heirs own the six-sevenths of said ore and minerals." The easement however included not merely the right to the ore, but the right to search and dig for it and transport it over the land. Held to be questionable whether the statement was sufficient to save the grantor from liability on his covenant against encumbrances.

But it appearing that the conveyance was made under a previous written contract which stated expressly that the land was to be conveyed subject to the rights of the Holley heirs "to six-sevenths of the iron ore mines upon said land," and that the mistake was wholly that of the scrivener, not observed by either party until some time after, it was held, upon a petition of *M* for a reformation of the deed, that it ought to be so far reformed as to state the incumbrance in the manner in which it was stated in the contract.

ACTION of covenant, for a breach of the covenants of seizin and against incumbrances in a deed; and a bill in equity by the defendant in that action against the plaintiffs in it, for the reformation of the deed; brought to the Superior Court in Hartford county. The cases involved the same general facts and were referred together to a committee and heard as one case. As most of the questions in the case arise in the action at law the term plaintiffs will be applied solely to the plaintiffs in that action and the term defendant to the defendant therein; except where the context shows clearly that a different application is intended. The following facts were reported by the committee:—

John M. Holley, formerly of the town of Salisbury in this state, died the owner of a large estate. After his decease, in the year 1836, this estate was regularly settled under his will, and in due course of law distributed to his widow and seven children. A large part of the property was land in Salisbury amounting to many hundred acres, and of this there was an extensive tract, part of which, being about two hundred

and six acres, was distributed in equal undivided thirds to his three daughters, Harriet H. Burrall, wife of William P. Burrall, Mary Ann Lyman, wife of Moses Lyman, Jr., and Sally P. Robbins, wife of Samuel S. Robbins. In the distribution there was prefixed to the distribution of the lands and made a part of the same, the following provision:—" It is understood and agreed by the children of the said John M. Holley, that all the iron ores which may be found in the land hereinafter distributed shall be owned by them in common, in equal seventh parts, and the distributors have accordingly distributed to each an equal undivided seventh part of any ores that may be found upon any of the following described real estate which has been distributed to said widow and children, with the privilege of ingress and egress to each and all of them for the purpose of digging said ores. It is also understood that if any damage is done to the land distributed to any heirs in searching for, digging, or transporting said ore, reasonable damage shall be paid to the owners of said land."

The children referred to in the provision were John M. Holley, George Holley, Alexander H. Holley, Harriet H. Burrall, Mary Ann Lyman, and Sally P. Robbins, and Maria Holley, afterwards the wife of Edwin B. Williams.

Shortly after the distribution, and before any of the conveyances hereinafter stated, the interests of the said John and George Holley became vested in the said Alexander Holley, who thereby became the owner of three-sevenths of the ore interests referred to.

On the 2d day of April, 1839, William P. and Harriet Burrall, Moses and Mary Ann Lyman, and Samuel S. and Sally P. Robbins, conveyed to Elisha Lee the above two hundred and six acre tract, the deed containing the following reservation:

" And we, the said grantors, do hereby except from the deed of conveyance of said real estate, and reserve for our own use and benefit, and for the use and benefit of our heirs and assigns, and for the use and benefit of the other devisees and heirs at law of the said John M. Holley, deceased, and for their heirs and assigns, all of the iron ore in or upon said

real estate, and also the right and privilege of entering upon the same with teams, carts and other vehicles, and with laborers, and of searching for, digging and raising said ore, and of transporting the same from said land, and also the right and privilege to the other devisees and heirs at law of said John M. Holley, deceased, and their heirs and assigns, of all their right, interest and estate in or to said ore or regarding the same. It is also understood if any damage is done to the land aforesaid in searching for, digging or transporting said ore, reasonable damage shall be paid to the then owner of said land by the person using said privilege."

The same grantors, under a distinct arrangement, on the same day, executed and delivered to said Lee, another deed of which the following is a part:—

" Know ye that we, &c. for the consideration of two hundred dollars received to our full satisfaction of Elisha Lee of &c., do by these presents remise, release, and forever quitclaim unto the said Lee, his heirs and assigns forever, all such right, estate, title and demand whatsoever, as we have or ought to have in or to the one undivided seventh part of all the iron ore in or upon a certain farm of land lying in Furnace Village in said Salisbury, which farm was distributed jointly to the said Harriet, Sally, and Mary Ann, from the estate of said John M. Holley, deceased; said farm containing about two hundred acres of land, and is the same farm we, the said grantors, have conveyed to said Lee, and is called and known as the Porter farm; and this deed is to convey our title and estate to one-seventh part of the iron ore on said farm and no more."

On the 1st day of May, 1843, the said Lee conveyed to James Blodgett a portion of the land conveyed to him by the deed last above described, the portion conveyed being described by metes and bounds and being about thirty-eight acres less than the whole tract, together with an undivided one-seventh of the ore right in the land conveyed, the land being conveyed subject to the six-sevenths of the ore right held by the Holley heirs.

On the 2d day of April, 1867, Blodgett conveyed to the

defendant a portion of the tract conveyed to him by Lee, the portion conveyed being described by metes and bounds, and being about eighteen acres less than the whole tract that had been conveyed to him; together with an undivided one-seventh of the ore right in the land conveyed, the land being conveyed subject to the six-sevenths of the ore right held by the Holley heirs.

On the 30th day of October, 1867, the defendant entered into the following written agreement with H. Tudor Brownell, Henry B. Graves, and James Hubbard, respecting the farm and ore rights purchased by him of Blodgett.

"This agreement made and entered into this 30th day of October, 1867, by and between Monroe Miller of the town of Salisbury, party of the first part, and Henry B. Graves of Litchfield, H. Tudor Brownell of the city of Hartford, and James Hubbard of said Salisbury, parties of the second part, witnesseth:

"That the said Miller, in consideration of the agreements and conditions hereinafter set forth, to be performed by the parties of the second part, hereby covenants and agrees to convey by a good and sufficient warranty deed, that certain farm situated in said Salisbury, in or near the village of Lakeville, bounded and described as follows: (describing it,) containing about one hundred and thirty-nine acres, being the same farm that I purchased of James Blodgett about one year ago; also the undivided one-seventh part of all the iron ore in and upon said farm, which I own as tenant in common with A. H. Holley and others. But it is understood that said farm is subjected to the interest of said A. H. Holley and others, to the six-sevenths of the iron ore mines or minerals, in and upon said farm; and that my conveyance of said farm is subjected to said six-sevenths mineral rights; and deliver said deed to the parties of the second part, on or before the first day of April, 1868.

"Now the parties of the second part, in consideration of the foregoing, hereby covenant and agree to pay the said Miller, his heirs and assigns, the sum of twenty-five thousand dollars, in manner as follows (to wit): ten thousand dollars

on the first day of April, 1868, on the delivery of said deed to said parties of the second part, and five thousand dollars annually thereafter, on the first day of April in each and every year, until the whole sum of twenty-five thousand dollars shall be fully paid, together with the annual interest; the parties of the second part to secure by mortgage or otherwise the balance due after the payment of said ten thousand dollars.

" And it is further covenanted and agreed by the parties of the second part, that if they shall neglect or fail to pay said sum of ten thousand dollars, on the first day of April next, and secure the payment of the balance of said twenty-five thousand dollars on the delivery of said deed as hereinbefore provided ; then the said parties of the second part hereby agree to forfeit and pay to the party of the first part the sum of five thousand dollars. Always provided that if the parties of the second part shall not be able to obtain a lease from said A. H. Holley and the other proprietors of said six-sevenths of the said mines or mineral interests in said land, on the terms and stipulations agreed to by and between said A. H. Holley and said Brownell this day, then this agreement shall be null and void, if the parties of the second part shall desire to have it null and void."

On the 12th day of June, 1868, the defendant executed and delivered to Louis H. Bristol, as trustee, a deed of which the following is the material part :—

" Know ye that I, Monroe Miller, of the town of Salisbury, Connecticut, for the consideration of twenty-five thousand dollars, received to my full satisfaction of Louis H. Bristol, of the city and county of New Haven, as trustee of and for the sole use and benefit of the Hartford and Salisbury Ore Bed Company, hereafter to be organized under the joint-stock laws of this state, do give, grant, bargain, sell and confirm unto the said Louis H. Bristol as trustee aforesaid, that certain tract of land situate in said Salisbury, in the village of Lakeville, bounded and described as follows: (describing it,) containing about one hundred and fifty acres ; excepting, and reserving to myself my heirs and assigns, the two acre lot

lying directly in rear of the new academy, with a convenient right of way to and from the highway aforesaid. And I, the said Miller, do sell and convey the undivided one-seventh part of all the iron ore and other minerals in and upon said premises which I own in common with the heirs and devisees of John M. Holley, deceased. But it is understood that the said Holley heirs own the six-sevenths of said ore and minerals."

Subsequently the plaintiffs received a charter, and were incorporated by the General Assembly of this state, and thereupon afterwards Bristol as trustee, on the 26th day of August, 1868, released to the corporation all his interest as trustee under the conveyance last above described. The land described in, and purporting to be conveyed by, the last two deeds, is two acres less than the whole tract purporting to be conveyed by Blodgett's deed to the defendant.

On the 28th of April, 1868, Alexander H. Holley, owning three-sevenths of the ore rights mentioned in the distribution, W. P. and Harriet Burrall, Moses and Mary Ann Lyman, Samuel S. and Sally P. Robbins, and Mary Ann Holley, as trustee of Maria Williams, (in whom as such trustee the said Maria's one-seventh ore right under the distribution was vested, with power to act in making the following instrument,) as party of the first part, made to Brownell, Graves and Hubbard, as party of the second part, a lease of all their interest in the iron ore mine on the land purchased by the lessees of Miller, for the term of twenty years, upon certain conditions as to the efficient working of the mine, and upon certain stipulations as to payment of a certain sum per ton for all the iron ore obtained. The land mentioned in said instrument " as the farm recently owned by the Messrs. Miller of Lakeville, and being situated in Lakeville," is the same described and purporting to be conveyed in said Blodgett's deed to the defendant.

All the interest of the said Brownell, Graves and Hubbard under the lease were soon after assigned to, and have ever since been held by the plaintiffs.

On the 17th day of February, 1871, the plaintiffs made a

lease of the property to P. W. Lippitt. Bristol, as trustee, Brownell, Graves and Hubbard, as lessees, the plaintiffs, and Lippitt their lessee, have had undisturbed possession and enjoyment of the premises purporting to be conveyed and leased to them in accordance with the terms of their respective deeds and leases. The only motive of Brownell, Graves and Hubbard in making their contract of October 30th, 1867, with the defendant, and obtaining the defendant's deed to Bristol, as trustee, and of the plaintiffs in obtaining the deed of the trustee to them, was the ore bed, and Miller's supposed ownership of the one-seventh of the iron ore, purporting to be conveyed by his deed to the trustee ; and the mining of the ore was the object of the plaintiffs' organization.

On the 23d day of September, 1869, Alexander H. Holley executed to James P. Marsh a bond for a conveyance to him of the three undivided sevenths which he owned in the mine, subject to the lease before described to Brownell, Graves and Hubbard, together with all royalties and rents due or to become due to him under the lease, for which Marsh was to pay him $20,000, of which $2,500 was to be paid down and $2,500 by note payable in ten days and the balance in one, two, and three years, with interest, a deed to be given on payment of the first of the three notes last mentioned and a mortgage back to secure the remaining notes.

Marsh made the cash payment of $2,500, and the $2,500 note was also paid or otherwise arranged and settled ; but no other payments have ever been made or tendered by him, neither has Holley ever made or tendered to him any deed of the premises, Marsh questioning his title, but insisting on an equity right in the premises under the bond, which was put on record by him in the Salisbury records, October 17, 1870. Marsh, when he made the contract with Holley was, and ever since has been, an officer of the plaintiffs' corporation, and has been entrusted with the charge of prosecuting the present suit against Miller.

The land distributed as above to Mrs. Burrall, Mrs. Lyman and Mrs. Robbins, was not the whole of the original Porter farm as conveyed to their father, and included other land not

part of the Porter farm; but when the distribution was made, and before the decease of the father, an ore bed had been known and opened and somewhat worked in that part of the Porter farm so distributed in common with other lands to said three daughters, but no ore was then known on other lands of the estate, nor has any ore bed since been found or known to exist on such other lands, although indications of the existence of iron ore in such other lands have been observed. The deeds from Blodgett to Miller, and from Miller to Bristol, each conveyed less of the Porter farm land than was conveyed in the deeds to Blodgett and Miller respectively, and the ore bed is known to extend into a few acres of land not in the deed of Blodgett to Miller, but previously conveyed by Blodgett to another party. Otherwise, so far as known, the ore bed, so far as in the land of the Holley estate, is in the lands conveyed to Bristol as trustee.

Before executing the contract of October 30th, 1867, with Graves, Brownell, and Hubbard, and after stating $25,000 as his price for his land and one-seventh of the iron ore therein, Miller told the other party that he owned the one-seventh of the iron ore in the land, and that the Holley heirs owned the other six-sevenths; but that he did not know what the Holley rights were, and wished them to go to the records and look for themselves; and before they executed the contract, Brownell, Graves, and Hubbard, or some of them, did examine the Salisbury town records, and told Miller they had done so, and that if they could get a lease of the other six-sevenths they could "handle the thing;" and they expressed no dissatisfaction with the Miller title. Bristol, before he took his deed, also examined the town records in reference to Miller's title.

Before the Miller contract was executed, and while the negotiations about it were pending, Brownell went to A. H. Holley and Samuel S. Robbins, who acted for the Holley heirs, to inquire as to the feasibility of himself and Graves and Hubbard obtaining a lease from them of the six-sevenths ore right in the Miller land and was encouraged to expect this, and on the 28th of April, 1868, they obtained the lease hereinbefore stated.

From the date of the deeds to Lee, the title to one-seventh of the iron ore in the successive owners of the lands conveyed to Lee, Blodgett, Miller, Bristol, and the plaintiffs, has been recognized by the Holley heirs, the owners of the other six-sevenths, as a valid title, and the same seems not to have been questioned by any one but the plaintiffs, nor by them until on or about the commencement of the present proceedings. Since about 1843 the owners of these lands have been exercising such right as owners of the one-seventh, recognized as such by the Holley heirs, and dividing with them the proceeds of mining such ore on that basis, unquestioned by any one. This mining has not been constant until the plaintiffs undertook it, but has been repeatedly undertaken before, at intervals, and in one or two cases continued through quite a period. The plaintiffs, since taking their title to the land, have continued to possess and enjoy the one-seventh right by themselves and their tenants; but since some time after taking their title to it from Miller, through Bristol trustee, they have questioned its validity, as now in these proceedings, although continuing to possess and enjoy the right.

With the purpose of assuring the title of the one-seventh to Miller, and so to the plaintiffs, A. H. Holley, Mrs. Burrall, Mrs. Robbins, Mrs. Lyman, and their husbands, and Maria L. Williams and her trustee, Mary Ann Holley, on the 14th day of August, 1873, executed and delivered to Miller a quitclaim deed of all their interest in the one-seventh ore right which the deed of Miller purported to convey to Bristol as trustee, which deed was the next day put on record. When afterwards notified of this deed, the plaintiffs refused to take anything under it by operation of law, and so notified the defendant, and tendered to him a reconveyance of whatever rights, by operation of law, the deed of the Holley heirs vested in them, which tender was declined.

On the 6th of September, 1873, the defendant also executed and tendered to the plaintiffs a quitclaim deed of the one-seventh ore right in question, which deed the plaintiffs refused to accept.

When Miller made his contract with Brownell, Graves and Hubbard, and gave his deed to Bristol, trustee, he set no separate valuation on the land and on the one-seventh ore right. His price, as stated and closed by him in the contract and deed, was $25,000 for the whole farm and one-seventh ore right together. Brownell, Graves and Hubbard, on their part, estimated the land at $10,000, and the ore right at $15,000, but it did not appear that Miller knew this. Of the $25,000, fifteen thousand has been paid, $14,000 to Miller, and $1,000 on a mortgage given by Miller to Blodgett, which the plaintiffs had assumed to pay as part of the $25,000. There remains $4,900 principal due on the mortgage, with interest, and $5,100 with interest due to Miller.

The deed to Bristol, trustee, was given by Miller in intended fulfilment of his contract with Brownell, Graves and Hubbard, at the request of these latter, who had not at the time brought about the incorporation of themselves and others as they had expected and were expecting to do, and as finally accomplished in the incorporation of the plaintiffs. When the incorporation and organization of the plaintiffs under their charter was effected, Bristol, as trustee, at the instance of Brownell, Graves and Hubbard, made his deed to the plaintiffs. The defendant objected to the plaintiffs offering any evidence of the breach of the covenant of seizin and against incumbrances in the deed of Miller to Bristol as trustee, on the ground that no right to sue in this action for such breaches belonged to the plaintiffs, and the evidence was received subject to the objection.

If, at the time of the execution and delivery of the deed to Bristol, trustee, the defendant under the foregoing facts and deeds was not seized, as in the deed covenanted, of the one-seventh of the iron ore in the lands conveyed to him by the deed, the committee found the damage to the plaintiffs by reason of the breach of the covenant as follows:—The land alone, excluding all right in the iron ore therein, was worth at the time of the contract and deed given, $12,000. If by law the difference between that sum and $25,000, the

price given to Miller for the land and one-seventh of the iron ore therein, should be held to be the rule of damages, the committee found the damage for the breach of the covenant of seizin to be the sum of $13,000, upon which he allowed no interest, because the plaintiffs had had the benefit of the one-seventh ore right to the time of trial. If, however, the committee was at liberty to decide the damage by the evidence of the values offered in connection with the price agreed upon, he was of opinion and found that, when the contract of October 30th, 1867, and the deed to Bristol were made, the value of the land and of one-seventh of the iron ore therein did not exceed $14,400, and he found the damage to the plaintiffs by the breach of the covenant of seizin to be at the time of the breach the sum of $2,400, without interest, as before. The above finding of damages in either case was made subject to the effect of the deed by the Holley heirs to Miller of August 14th, 1873, and that of Miller to the plaintiffs of September 6th, 1873. If, in the judgment of the court, these deeds, or either of them, operated to vest the title of the one-seventh of the ore right in the lands conveyed to Bristol in the plaintiffs, then the committee found the damage done the plaintiffs by the alleged breach of the covenant of seizin to be one dollar only.

It did not appear that any of the parties to the agreement of October 30th, 1867, or to the deeds to and from Bristol as trustee, had, until after the plaintiffs received their deed from the trustee, any actual knowledge of the incumbrance now claimed by the plaintiffs to have existed when the Miller deed to the trustee was given, and which is alleged in the plaintiffs' declaration.

If upon the facts found the court should be of opinion that the incumbrances alleged by the plaintiffs existed when and as alleged, the committee found the breach of the covenant against incumbrances as alleged, and the damage for such breach to be the sum of $1,000.

Upon the petition of the defendant Miller against the plaintiffs for the reformation of his deed to Bristol, so that the land would be conveyed in express terms subject to the six-

sevenths of the ore right in the Holley heirs and the right to dig for and transport the ore upon the land, the committee found, in addition to the foregoing facts, the following :—

The deed to Bristol, trustee, was intended and understood by the parties thereto, and to the agreement of October 30th, 1873, to carry out the undertaking of the petitioner as expressed in the agreement, and no further or additional obligations in reference to the Holley heirs rights were meant to be assumed in the deed by the petitioner than those the agreement called for, and so far as the deed was drawn otherwise it was an accidental mistake of the scrivener, not designed, and not known to exist by any of the parties until after the deed was delivered to Bristol, and after his transfer to the corporation.

Upon these facts the cases were reserved for the advice of this court.

*C. E. Perkins*, for the plaintiffs.

1. The conveyance from Miller to the plaintiffs through Bristol was void, so far as the one-seventh of the mineral right was concerned. The original deed from Burrall and others was void, as being an attempt to convey a distinct portion of an undivided estate of tenants in common; so that none of the grantees ever received any title; but if this were not so, the deed of Miller was void, as it purported to convey a similar specific right. *Mitchell* v. *Hazen*, 4 Conn., 495, 509 ; *Griswold* v. *Johnson*, 5 id., 366 ; *Gates* v. *Treat*, 17 id., 392 ; *Marshall* v. *Trumbull*, 28 id., 183 ; *Porter* v. *Hill*, 9 Mass., 34 ; *Merrill* v. *Berkshire*, 11 Pick., 269. This rule is applicable to mineral rights like the present one. They are separate estates from the land, and treated like separate lots of land. *Adams* v. *Briggs Iron Co.*, 7 Cush., 361 ; *Boston Franklinite Co.* v. *Condit*, 19 N. Jer. Eq., 394 ; *Caldwell* v. *Fulton*, 31 Penn. S. R., 475 ; *Coleman's Appeal*, 62 id., 252. If Miller had an undivided one-seventh mineral right in all the land that Blodgett conveyed to him, this deed could not convey any part of it, for it did not convey all the land, or the ore right in all. It is not the case merely of a

deed of land to which the grantor had no title, it is a void deed, which could not convey the title if the grantor had it. It is a clear case of a payment of money under a mistake of fact, and an entire failure of the consideration.

2. Under these circumstances we are entitled to recover back the consideration paid by us for this ore right, with interest. This consideration was $15,000. It is expressly found by the committee that this amount was what Brownell and others, and also the corporation, agreed to pay, and paid for this right. The land was entirely subsidiary, they did not want it at all, and only bought it because they could not get the mineral right alone. The whole purchase was made and the company was organized only for the purpose of working this ore bed. The rule of damages for breach of the covenant of seizin is the consideration money and interest. *Mitchell* v. *Warner*, 5 Conn., 504. Rawle on Covenants for Title, 237. Interest is always allowed unless it is proved that the grantee has received profits, for which he is not liable to the real owner, to a greater amount than the interest. Rawle on Covenants for Title, 300, 303 ; *Foster* v. *Thompson*, 41 N. Hamp., 373 ; *Whiting* v. *Dewey*, 15 Pick., 428. The committee erred in finding that the grantee should not recover interest. If the question was for him to decide. which is doubtful, he was wrong.

3. But the defendant claims that because the deed from Miller was given to a trustee until the corporation should be organized, these plaintiffs cannot recover. It is true that the covenant of seizin is broken as soon as made, if at all, and therefore does not run with the land, and in general a second grantee cannot sue the first grantor. But in this case the covenant was really made with the corporation, which was understood by all concerned to be the real party in interest; the conveyance to Bristol was not to hold permanently as trustee for the benefit of the plaintiffs, but only until the plaintiffs should come into existence, and then immediately convey. The deeds to Bristol and from him should all be regarded as made at the same time, and as in substance a deed to the plaintiff. *Potter* v. *Yale College*, 8 Conn., 60 ;

*Dansville Seminary* v. *Welch*, 38 Barb., 221. Bristol never had any interest in the purchase in any way, and cannot recover, as he never paid anything, the consideration paid being the rule of damages. If this be not so, under our statute the " equitable owner " of a chose in action can sue in his own name. Gen. Statutes, tit. 1, sec. 64. Besides this, when a trust is terminated, by operation of law or otherwise, and the property has vested in the *cestui que trust*, he may after that time maintain an action on the title. Perry on Trusts, 304, and cases there cited.

4. But the defendant claims that if we could recover, we are deprived of this right to recover in covenant because he has obtained a conveyance from the Holley heirs. There is, without doubt, a principle of law that' where the grantor obtains a title, after he has given a conveyance, he is and ought to be estopped from setting it up against a grantee. And in some cases language has been used which implies that the title actually passes by operation of law. But it is clearly inequitable that this doctrine, made for the benefit of a grantee, should be turned into an instrument of injury to him and of benefit to the grantor. "It is against conscience that a party should have a right of election whether he would perform his covenant or only pay damages for the breach of it." 1 Story Eq. Jur., § 717 *a*. Courts have seen this, and though in a few cases they have carried the doctrine to this extreme, yet the later and better considered cases hold that the choice is with the injured party, and if he refuses to receive the title he can recover his legal damages. Rawle on Covenants, 275, 425, 445 ; *Tucker* v. *Clarke*, 2 Sandf. Ch., 96 ; *Bingham* v. *Weiderax*, 1 Comst., 513 ; *Blanchard* v. *Ellis*, 1 Gray, 195 ; *Burton* v. *Reeds*, 20 Ind., 93 ; *Noonan* v. *Ilsey*, 21 Wis., 146. But if the court prefers to establish a different rule, then we say this deed from the Holley heirs was void, as they were ousted of the possession. Such deeds are void by statute. The committee finds that the plaintiffs holding the land, also held this one-seventh of the mineral right as owners of it, not under any person, but independent of all persons whatever. *Sherwood* v. *Waller*, 20 Conn., 270 ; *Barry* v. *Adams*,

3 Allen, 493 ; *Loud* v. *Darling,* 7 id., 205.   It is certain that the Holley heirs had no possession of this one-seventh, either actual or constructive.   They did not even claim that it belonged to them.

5. As to the breach of the covenant against incumbrances, if we can recover for the breach of the covenant of seizin we can recover for this.   There is no question but there was an incumbrance, and that the damage was one thousand dollars. If we recover at all we recover that amount.   That either party might have had or even did have notice of the incumbrance is no defence.   Rawle on Covenants for Title, 117, 260 ; *Estabrook* v. *Smith,* 6 Gray, 578.

6. With regard to the defendant's petition for the reformation of his deed ; the sole question here is whether the deed should be re-formed by inserting in it words which except from the operation of the covenant against incumbrances, rights in the heirs of John Holley to enter on the land in question " to dig and carry away ore."   The deed from Burrall and others to Elisha Lee reserved to all the Holley heirs, besides and in addition to the iron ore, " the right and privilege of entering upon the land conveyed with teams, carts, and other vehicles, and with laborers, and of searching for, digging, and raising said ore, and of transporting the same." Neither Miller nor those contracting with him knew of any such incumbrance, or had it in contemplation at all, when the agreement and deed were made ; and it therefore could not have been intended by either of them that such an incumbrance should be excepted.   If they had known it, no doubt a change in the deed, or in the consideration, or both, would have been made, as the committee finds that this incumbrance injures the land a thousand dollars.   This court is now asked to add this exception to the deed, so as to throw the loss of this thousand dollars upon us, who paid it to Miller, trusting to his covenant, instead of on him, who has received the money and does not offer to pay it back.   The rule of equity applicable to reforming written agreements is that where there is an accidental omission of a material stipulation contrary to the intention of both parties, the court will reform

the agreement by inserting it.  1 Story Eq. Jur., § 155.  But when the omission is of some fact equally unknown to both parties, equity will not interfere.  It will not make a new contract including something which was not fully agreed to or known by both, and was left out for that reason.  1 Story Eq. Jur., §150 ; *Thompsonville Scale Co.* v. *Osgood*, 26 Conn., 16.  As appears by the answer and report the agreement contains only a clause that the farm was subjected to the interest of the Holley heirs in the six-sevenths mineral right.  It says nothing whatever about this right to dig, &c., and for the reason that neither party knew there was any such right. The deed to Bristol follows the agreement, saying, " But it is understood that the said Holley heirs own the six-sevenths of said ore and minerals."  Nothing whatever is said in the conveyance or agreement about the land being subject to a right of the Holley heirs to dig, &c.  Nor can the agreement be so twisted as to cover the incumbrance in question.  What was intended to be excepted was this six-sevenths, and nothing more, and this was only mentioned because a deed of the land would have conveyed all the mineral right, and the existence of this six-sevenths right in the Holley heirs would have been an incumbrance.

*A. P. Hyde,* for the defendant.

CARPENTER, J.  The first question presented by this record is a very simple one.  Who is entitled to sue for a breach of the covenants of seizin and against incumbrances contained in the deed from the defendant to Louis H. Bristol?  It is conceded that these covenants do not run with the land; that they were broken, and that a right of action accrued the instant the deed was delivered.  To whom did it accrue ?  Not to the plaintiffs certainly, for at that time the corporation was not in existence.  The deed was to, and the covenants therein were with, Louis H. Bristol.  The legal title, not only to the land, but to the rights of action arising from the conveyance, vested in him and in him alone.  That he was a mere trustee matters not; it only shows that the right of

action was in his name as trustee, and that the amount collected would be a fund in his hands for the *cestui que trust*.

The objection that the defendant might resist a suit brought in the name of the trustee on the ground that he personally paid no part of the consideration is more imaginary than real. The consideration was in fact paid to the defendant, and he acknowledged in his deed that he received it of Bristol. The fact that other parties furnished the money is immaterial. In contemplation of law, therefore, for the purposes of an action on these covenants, the consideration was paid by Bristol.

The statute, (Gen. Statutes, tit. 1, sec. 64,) authorising the assignee and equitable owner of a chose in action, not negotiable, to bring an action thereon in his own name, does not aid the plaintiffs. The plaintiffs are the parties beneficially interested in the right of action, but they are not assignees of a chose in action. Mr. Bristol conveyed the land by a quitclaim deed in the ordinary form, but he did not assign or attempt to assign a chose in action. Had he done so, and had the plaintiffs in their declaration alleged that they were the actual and *bonâ fide* owners of the chose in action mentioned therein, and set forth when and how they acquired title thereto, as required by the statute, their claim in this respect might have been sustained. As it is, we think it cannot be.

We might, and ordinarily would, stop here; but as the parties, for the purpose of avoiding further litigation, unite in requesting us to decide all the questions in this action, we will proceed to dispose of them upon their merits.

We will first consider the covenant of seizin and of good right to sell.

The doctrine that a deed by a tenant in common of a portion of the common estate by metes and bounds, is inoperative as against his co-tenants, is firmly established. *Mitchell v. Hazen*, 4 Conn., 495; *Griswold v. Johnson*, 5 Conn., 363; *Marshall v. Trumbull*, 28 Conn., 183. Mineral and ore rights, when severed from the land and owned by tenants in common, are real estate, and to them the same doctrine applies.

*Adams* v. *Briggs Iron Co.,* 7 Cush., 361. Consequently, where the owner of land from which mineral rights have been severed, is a tenant in common with others of such rights, and conveys a portion of the land by metes and bounds, and also his share of the mineral rights therein, the deed, so far as such easement is concerned, is inoperative as against his co-tenants.

The deed therefore from James Blodgett to the defendant, dated April 2d, 1867, conveying as it does a portion of the land owned by him, and which was subject to the mineral rights in question, and attempting to convey the whole of his mineral right in the land conveyed only, the co-tenants not co-operating therewith, was inoperative in respect to those rights as against the other owners.

It follows, therefore, without reference to the prior deeds, or to the fact that the defendant conveyed to Bristol less land than he received from Blodgett, that at the time of the delivery of the deed to Bristol, the defendant was not seized of the one undivided seventh part of the ore rights attempted to be conveyed thereby, and that his covenant in that respect was broken.

The next inquiry is, what is the rule of damages? The general rule is, in actions on contracts, that the plaintiff shall recover the actual damage sustained. An action for a breach of the covenant of seizin in a deed is not an exception to this rule. It is doubtless true that in such actions generally the actual damage sustained is in fact the consideration paid and interest, because the party takes nothing by his deed. It is in its inception, and continues to be, a nullity. But if the party takes anything by his deed, directly or indirectly, by its own force or by its co-operation with other instruments or other circumstances, whether it be the entire thing purchased or a part of it, its value must be considered in estimating the damages. *Mitchell* v. *Hazen,* 4 Conn., 495, is relied upon by the plaintiffs as an authority in support of their claim that they are entitled to recover the consideration paid and interest. A careful examination of that case has satisfied us that the court did not intend to establish

an inflexible rule to be applied indiscriminately to all cases. They regarded the deed in that case as wholly inoperative. In that view of the case nothing less than the consideration paid and interest would be a full compensation. The consequences of a partial breach, the deed being effectual to some extent and for some purposes, were not considered by the court.

In ascertaining the actual damage it becomes necessary to consider what effect is to be given to the deed in the present case. The plaintiffs contend that that portion of the deed which attempts to convey an undivided portion of certain mineral rights is absolutely void. In support of this claim several cases in this state are cited. *Mitchell* v. *Hazen*, 4 Conn., 495 ; *Griswold* v. *Johnson*, 5 Conn., 363 ; *Marshall* v. *Trumbull*, 28 Conn., 183. In none of these cases was there any confirming grant by the co-tenants ; nor were there any circumstances, which the court regarded as sufficient, co-operating with the deed, to give it validity. In *Mitchell* v. *Hazen*, HOSMER, C. J., says, " The deed passed no title, and in effect was an utter nullity." That is indeed strong language, but it must be understood in its application to the facts of that case. The deed was by an administrator of a tenant in common, without any co-operation whatever, then or subsequently, of the co-tenants. Moreover the learned judge refers to *Bartlett* v. *Harlow*, 12 Mass., 348, as containing a correct statement of the question. A reference to that case will show that the court strongly intimated that the levy of the execution was not wholly void, but might operate as an estoppel, and that intimation was followed and the doctrine distinctly enunciated in *Barnum* v. *Abbott*, 12 Mass., 474, and the same doctrine has been re-affirmed in subsequent cases. In *Griswold* v. *Johnson*, the language of the court is, " The deed of this common estate by metes and bounds, the one tenant in common thus attempting to make a partition of the property without *any co-operation of the other*, is undoubtedly void ;" thus clearly implying that the deed, if with the co-operation of the other tenant in common, would not have been void. In *Marshall* v. *Trumbull*, HINMAN, J., says,

" Deeds and other conveyances of such property are not merely inoperative against the rights of the other tenants, when a partition is made, but they are, as remarked by Judge HOSMER, undoubtedly void, and the other co-tenants may at all times so treat them." The court certainly could not have intended to say that the co-tenants, after a confirmation by them of the conveyance, were at liberty to treat it as void. Their right to do so is clearly a privilege which may be waived ;° and having been properly waived, the conveyance is binding upon them, and, operating as an estoppel against the grantor, it vests a complete title in the grantee.

The only reason given in all these cases for holding such deeds void is, that they tend to prejudice the rights of the co-tenants. The rule should not be broader than the reason ;. and when the reason does not exist the rule should not apply.

Mr. Washburn states the law on this subject as follows ; " Such a conveyance of the personal interest of a tenant, however, would be good as to all persons except his co-tenants, and, if not objected to by them, will be valid and effectual to all intents." We think that is stating the doctrine too broadly— at least broader than the authorities will justify. The mere absence of objection on their part does not seem to be sufficient. Their assent, expressed by deed, or in some other proper manner, seems to be required.

In New Hampshire, as in Massachusetts, the doctrine that such conveyances may be made valid and effectual by the act of the co-tenants, is well established. *Great Falls Co.* v. *Wooster* , 15 N. Hamp., 412 ; *Whitton* v. *Whitton*, 38 N. Hamp., 127.

In view of the authorities in this state and elsewhere, we think the true doctrine to be, that a deed by one tenant in common of a part of the common property by metes and bounds, is inoperative as against the other tenants; but if the co-tenants, then or subsequently, by a suitable conveyance confirm the grant, the grantee still holding under his deed, it becomes, in effect, operative and binding upon all concerned.

The doctrine thus stated covers this case. The plaintiffs

took and now retain the possession of the whole premises purchased, including the one-seventh mineral right. They have a lease from the owners of the remaining six-sevenths, so that the whole, for a term of years, vests in them. The other tenants also have by their deed confirmed the sale to the plaintiffs. They have thus solemnly waived their right to object to the conveyance, and, the defendant being estopped by his deed from calling it in question, there is no one who can controvert the plaintiffs' title. In effect all technical difficulties are healed, and the plaintiffs receive in fact just what they purchased.

We have no occasion to determine the equitable rights of Marsh under his contract. If he has any equities, so far as they relate to the one-seventh interest now under consideration, they are not superior to the plaintiffs' equities, and cannot prevent the confirming deed from having full effect as such.

For a breach of the covenant of seizin therefore, the defendant could be subjected to nominal damages only.

In respect to the covenant against incumbrances little need be said. We are inclined to think that the incumbrance is not sufficiently stated in the deed to save it from the operation of the covenant.

However this may be, it is not stated so clearly and fully in the deed as it is in the agreement for a deed. It is manifest from the report of the committee that it was the intention of the parties that it should be so stated, and that the omission to do so was a mistake of the scrivener, not designed, and not known to exist by any of the parties until after the deed was delivered to Mr. Bristol, nor till after his transfer to the corporation. To that extent therefore the petitioner in the bill in equity is entitled to the relief prayed for.

The Superior Court is advised to render judgment for the defendant in the action at law, and for the petitioner in the bill in equity.

In this opinion the other judges concurred.