### JAMES P. MARSH vs. ALEXANDER H. HOLLEY.

A large quantity of lands belonging to the estate of a deceased person was distributed to seven children of the decedent, with a provision in the distribution that all the iron ores in the land should be owned by them in common in equal seventh parts, and that reasonable damage should be paid to the owner of any of the land that should be injured in digging for, or transporting the ore. The defendant, who had become the owner of three of the sevenths, executed a bond to the plaintiff for a conveyance to him of three undivided sevenths of the ore right upon a certain farm, which was a part of the estate and adjoined other portions of it; the plaintiff paying down a certain sum and giving certain notes on time, upon the payment of the first of which, with the tender of a mortgage back of the property for the balance, the defendant was to make the conveyance "by a sufficient deed, with the usual covenants of seizin and warranty." This bond the plaintiff placed on record as evidence of his equitable title, and had since asserted such a title, and had never formally abandoned his claim to it, or tendered a release of it. When the first note fell due the plaintiff did not pay it or tender payment, and none of the notes were ever paid, and the defendant did not make the conveyance. In an action for a breach of the defendant's covenant, with a count for the recovery back of the money paid, it was held—

1.   That the right of the other co-tenants to dig for ore on any part of the estate and deposit on any part of it the earth and debris thrown out in doing so, was not an incumbrance upon the ore rights conveyed, but was merely an inconvenience inseparable from the nature of the estate, and to which each of the co-tenants must submit.

2.   That the defendant could not convey an undivided ore interest in a part of the estate, without the concurrence of his co-tenants.

3.   That the plaintiff was not bound to advance his money and receive a deed that conveyed only an imperfect title.

4.  But that, as it was clearly possible for the defendant, by the concurrence of his co-tenants (which he claimed to have since procured) to make a good conveyance, the mere uncertainty whether he would do so, or difficulty of doing it, did not excuse the plaintiff from tendering performance on his part, and was not of itself a breach of the covenant.

5.  That the plaintiff could not recover back the money paid as a part of the consideration, as the contract had never been rescinded, his claim to an equitable title under it having never been abandoned or a release of it tendered to the defendant.

DEBT upon a bond for the conveyance of real estate, with a count for money had and received; brought to the Superior Court in Tolland County. The defendant pleaded the general issue, with notice of the condition of the bond set out in the declaration, and of his readiness and willingness to perform the same, but that the plaintiff had wholly neglected to perform or to tender performance on his part. The issue was closed to the court and the following facts found.

The defendant, on the 23d day of September, 1869, executed and delivered to the plaintiff a bond in the penal sum of twenty-five thousand dollars, to which was annexed the following condition:—

" The condition of this obligation is such, that whereas the said Marsh has purchased of me and I have sold to the said Marsh, his heirs and assigns, forever, upon the conditions following, three undivided seventh parts of all the iron ore in, upon, and beneath all those certain tracts or parcels of land known as the Porter Farm, so called, situate in the village of Lakeville, in the town of Salisbury; which farm is the same, all the same and none but the same land which was heretofore conveyed by William P. Burrall and Harriet H., his wife, Moses Lyman, Jr., and Mary Ann, his wife, and S. S. Robbins and Sally P., his wife, to Elisha Lee, then of said Salisbury, by their deeds dated the second day of April, A. D., 1839, and recorded in said Salisbury town records, to which said deeds reference is herein had for a more particular description of said premises; together with the rights and privileges of entering, at any and all times, with laborers, cattle, horses, mules, teams, carts, and other vehicles, and of searching for, digging and raising said ore, and transporting said ore upon and from said premises, together with any and all

royalties, rents or incomes now due or which may hereafter become due under and by virtue of a certain lease heretofore executed by Alexander H. Holley, Samuel S. Robbins, Sally P. Robbins, Mary A. Holley, trustee, Moses Lyman, Mary Ann H. Lyman, William P. Burrall and Harriet H. Burrall, to Henry B. Graves, James Hubbard, and H. Tudor Brownell, by instrument dated April 20th, A. D., 1868, and jointly acknowledged April 27th, and July 15th, 1868, and which is hereby referred to. It being understood and agreed that said purchase and sale are made subject to said lease; and it being also further agreed that in case said lease should become forfeited or void, then the said Marsh is to have and exercise all my rights and interests which said lease purports to convey, so long as said Marsh shall continue to pay according to their terms his several notes given me this day as hereinafter described. And whereas, the said Marsh has this day paid me in cash towards the payment of the purchase made by him as aforesaid, the sum of $2,500, and has given me his note of August 31st, 1869, for $2,500, payable September 10th, 1870, to the order of himself and indorsed by himself, and also by Woodruff and Beach; and has also given me his three other notes, all dated September 10th, 1869, each for the sum of $5,166.67, and respectively payable to me with interest, annually, on the 10th day of September, in the respective years 1870, 1871, 1872:—Now, if I shall, by a good and sufficient deed or deeds, with the usual covenants of seizin and warranty, convey to said Marsh, his heirs and assigns, the interest purchased by him as aforesaid, upon payment of said note of $5,166.67, due September 10th, 1870, and upon tender of a good and sufficient mortgage of the interest so purchased or other satisfactory security by said Marsh, to secure said two notes maturing respectively September 10th, 1871 and 1872, then this instrument is to be void; otherwise, to be and remain in full force and virtue in the law. It being understood and agreed that nothing herein is to be so construed as to make me, the said Holley, or my estate, liable to any person or persons for any damage to land or any interest therein in consequence of anything done in obtaining or removing said ore."

The plaintiff paid the defendant the sum of $2,500 in cash and gave him a note for the same amount endorsed by Woodruff and Beach, which was received as cash, but the same was not paid at maturity, and was never paid in full. The other notes have never been paid. The time for paying the $5,000 note was extended from time to time until November 10th, 1870, but the note was not paid, nor was the amount tendered or offered to the defendant, and the defendant has never delivered to the plaintiff a deed of the premises.

The "Porter Farm" referred to in the bond, was a part only of the real estate of John M. Holley, deceased, the father of the defendant, and lay adjoining to another large tract of land belonging to the estate.

The distribution of John M. Holley's estate contained the following clause: "It is understood and agreed by the children of the said John M. Holley, deceased, that all the iron ores which may be found in the land hereinafter distributed, shall be owned by them in common in equal seventh parts, and we have accordingly distributed to each an equal undivided seventh part of any ores that may be found upon any of the following described real estate which has been distributed to said widow and children, with the privilege of ingress and egress to each and all of them for the purpose of digging said ores. It is also understood that if any damage is done to the land distributed to any heirs in searching for, digging or transporting said ores, reasonable damage shall be paid to the owners of said land."

The distribution contained no other provision for paying damages thus done to mineral rights.

The mineral right distributed extended into all the lands owned by John M. Holley at the time of his decease. At the time the bond was executed the defendant was the owner of three-sevenths of the ore right.

The reason given by the plaintiff at the time for refusing to take a deed pursuant to the agreement, and pay the sum of $5,000, was that the other heirs of John M. Holley, owning the adjoining lands, or the mineral rights in them, could dig in those other lands, and place the earth and debris upon

the land in which the mineral right was to be conveyed by the defendant to the plaintiff. If such an incumbrance existed at the time the bond was executed, it continued to exist, and did exist on the 10th day of November, 1870.

The plaintiff now claimed that a further disability, or reason why the defendant could not convey a good title, existed at the time the bond was executed, and still existed, namely, that the ore rights of the Holley heirs, so reserved by the distribution, extended over all the lands of John M. Holley, deceased, of which the land in question, together with other adjoining lands, formed a part, and that the defendant had no legal right to convey an undivided mineral right in the lands described in the bond.

When the defendant was informed of this objection, he arranged verbally with the other Holley heirs to unite with him in the conveyance provided for in the bond, or in some other manner to ratify and confirm the same; and at the time of the trial claimed to be able and willing to make a good conveyance of the mineral right whenever the plaintiff should fulfill the bond on his part.

Both parties supposed, when the bond was given, that the defendant had, and could convey, a good title to the property therein described.

The land described in the bond upon which the three-sevenths ore right was to be conveyed, was distributed to the three daughters of John M. Holley.

The several conveyances of the land, or of parts thereof, since the distribution, and of parts of the ore right, appear more fully in the report of the case of *Hartford & Salisbury Ore Co.* v. *Miller*, 41 Conn., 112. It was agreed that the facts found in that case should be considered as found in this.

Upon these facts the case was reserved for the advice of this court.

*Perkins* and *Marcy*, for the plaintiff.

1. The plaintiff's right of recovery, under the first count

in the declaration, is founded upon the breach of the condition of the defendant's bond, in that, upon the 10th of November, 1870, the time to which the payment of the note due September 10th, 1870, was extended, the defendant failed to convey to the plaintiff the interest purchased by him, as set forth in the condition.   The acts to be done by the parties to the bond were dependent and concurrent, and in order to recover, the plaintiff, not claiming to have tendered performance, must show such acts or default of the defendant as would excuse him from a preparation to perform or offer of performance.   The court finds " that the note was not paid, nor was the amount tendered or offered to the defendant, and the defendant has never delivered a deed of the premises," and further finds " the reason given by the plaintiff, at the time, for refusing to take a deed, pursuant to said agreement, and pay said sum of five thousand dollars, was that the other heirs of said John M. Holley owning the adjoining lands, or the mineral rights in them, could dig in those other lands, and place the earth and debris upon the land in which the mineral right was to be conveyed by the defendant to the plaintiff.   If such an incumbrance existed at the time said bond was executed, it continued to exist, and did exist, on the 10th day of November, 1870.   The plaintiff now claims that other disabilities, or reasons why the defendant cannot convey a good title, existed at the time the bond was executed, and still exist."

Now, if an incumbrance existed at the time upon the property to be conveyed, or if the defendant was, by reason of insufficiency of title, unable to perform his undertaking,.then the plaintiff was under no obligation to tender a performance, or to do anything on his part to entitle him to recover on the bond.   The law does not require a party to do a nugatory act to save his rights.   *Smith* v. *Lewis*, 24 Conn., 624; *Abendroth* v. *Town of Greenwich*, 29 id., 356; *Lawrence* v. *Taylor*, 5 Hill, 107; *Holmes* v. *Holmes*, 12 Barb., 137; *Delavan* v. *Duncan*, 49 N. York, 485.   Did this disability to convey a good title exist at the time the conveyance was to be made?   The defendant had agreed to convey three undivided

seventh parts of the mineral rights in the Porter Farm. At the time the bond was executed he was the owner of three undivided seventh parts of the mineral rights extending through all the lands owned by John M. Holley at the time of his decease, which mineral rights, as an estate, separate from the remaining land, were created by the distribution of the estate and distributed in equal undivided seventh parts to each of the Holley heirs, and the nature and extent of these rights are to be ascertained by the construction of this distribution in the light of the then existing circumstances.

The court finds that the Porter farm was a part only of the real estate of John M. Holley, and lay adjoining to another large tract of land belonging to the estate. Now it is apparent that it was the intention of the Holley heirs that a new estate consisting of mineral rights in all the land of the deceased, should be created and separated from the land, and that this new estate should be owned by them individually in common in equal seventh parts.

If this construction of the distribution is correct, then the defendant, at the time the bond was executed, and at the time the conveyance was to be made, instead of owning in common with others three undivided seventh parts in each of several distinct and separate mineral rights, each mineral right extending only through each of the several distinct parcels of land, as distributed and parcelled among the several children by the distributors, owned three undivided seventh parts of one estate, consisting of mineral rights extending through all of several parcels of land, at least so far as the parcels so distributed lay adjoining each other so as to constitute one continuous tract of land, and therefore one estate in common. Again, this construction of the distribution being correct, any owner of any part of this undivided mineral right, would have the right, by the terms of the distribution, to enter upon any part of the land of the Holley estate, and search for and dig ores, and place the earth and debris upon any convenient portion of that land, irrespective of any division lines or boundaries made by the distribution of the remaining interest in the land, and if the defendant could have,

or had in fact, conveyed to the plaintiff three undivided sevenths of the mineral rights in the Porter farm only, as agreed, any of the other owners of the mineral rights extending through the Porter farm and land adjoining would have the right to enter upon this adjoining land near the Porter farm, and dig and search for ore, and place the earth and debris in a convenient place on the Porter farm, without any liability for damage except to the owner of the land, thus damaging the plaintiff's mineral rights and being an incumbrance upon the same. Besides this the defendant, who was a tenant in common of a mineral right, had agreed to convey a portion of that right by metes and bounds, which he could not do. *Hartford & Salisbury Ore Company* v. *Miller*, 41 Conn., 112.

2.    If the defendant, at the time the conveyance was to be made, was unable to convey by reason of the insufficiency of his title, or by reason of an incumbrance upon the premises, the plaintiff may treat the contract as rescinded, and recover upon his second count the consideration paid by him, with interest thereon, without showing an offer to perform the conditions on his part to be performed.    And this although the contract is under seal. *Lawrence* v. *Taylor*, 5 Hill, 107; *Judson* v. *Wass*, 11 Johns., 525 ; *Weaver* v. *Bentley*, 1 Caines Rep., 47 ; *Green* v. *Green*, 9 Cow., 46 ; *Battle* v. *Rochester City Bank*, 5 Barb., 414 ; *Morange* v. *Morris*, 34 id., 311; *Fletcher* v. *Button*, 4 N. York, 396 ; *Burwell* v. *Jackson*, 9 id., 535; *Murray* v. *Clay*, 4 Eng., 39; *Crossgrove* v. *Himmelrich*, 54 Penn. S. R., 203; *Hurst* v. *Means*, 2 Sneed, 546.

3.    It is found that "both parties supposed, when the bond was given, that the defendant had, and could convey, a good title to the property therein described."    A part of the consideration was therefore paid and received under a mutual mistake as to the defendant's ability to convey, and may be recovered back with interest, under the count for money had and received. *Northrop* v. *Graves*, 19 Conn., 548; *Gardner* v. *Mayor &c., of Troy*, 26 Barb., 423, and cases there cited; *Shearer* v. *Fowler*, 7 Mass., 31; *Johnson* v. *Johnson*, 3 Bos. & Pul., 162; *Briggs* v. *Vanderbilt*, 19 Barb., 222; *Cutts* v. *Guild*, 57 N. York, 229, 234.

4. But if at the time the conveyance was to be made the premises in question were unincumbered and the defendant had a good and sufficient title to convey the same, and did not then convey because of the default of the plaintiff, yet the defendant on the 10th day of September, 1869, received the sum of five thousand dollars in cash from the plaintiff, for which in point of fact the plaintiff has received no consideration, and which in equity and good conscience the defendant ought not to retain. The defendant cannot now treat this money as having been paid under the contract, inasmuch as this contract at the time this suit was brought was not an open and unrescinded contract. For the defendant, by his act of joining in the deed of 11th of August 1873, to Miller, will be deemed to have rescinded his contract, inasmuch as he parted with a right which left his own title different from the title which he agreed to convey to the plaintiff. The defendant having thus rescinded, and the contract containing no provision for a forfeiture of the money paid, the plaintiff may recover the same, with interest, under the count for money had and received. *Hickock* v. *Hoyt,* 33 Conn., 553, and cases above cited.

*A. P. Hyde,* for the defendant.

CARPENTER, J. The plaintiff seeks to recover, either on the count in covenant for a breach of the covenants contained in the bond, or on the counts in assumpsit for the money paid by the plaintiff under the contract.

The defendant's covenant is a conditional one; and the condition imposes a duty upon the plaintiff, the performance of which, or a legal excuse for non-performance, is essential to his right of recovery. The finding is explicit that he neither performed nor offered to perform his part of the contract. But he insists that he is excused from performance, and that the defendant is liable for not performing his covenants.

This excuse is two-fold:—1. That the co-tenants of the defendant in the mineral right in the real estate of John M. Holley, deceased, have a right to dig for ores in any part of

·the estate and place the earth and debris on the Porter farm, (in which is the right or interest contended for by the plaintiff,) and that this right constitutes an incumbrance upon the premises which prevents the defendant from conveying a good title; which incumbrance, he insists, not only excuses the performance of the conditions on his own part, but is itself a breach, or equivalent to a breach, of the defendant's covenants.

We do not think this a correct view of the law.   All the iron ores in the land belonging to the estate of John M. Holley were separated from the land, and a new estate created in which each of the heirs had an undivided seventh part.   The distribution provides that certain damage done to the land of any of the distributees in digging for ores, &c., shall be paid; but there is no provision for paying damage to a co-tenant in the ore estate.   The interest of each tenant in that estate is such, and such only, as the law gives.   The right to dig for ores, and of necessity to deposit the earth and debris somewhere, inheres in the estate itself.   The damage done to land owned by an individual, who may, or who may not, be interested in the ore, shall be paid; but the damage done by the co-tenants to each other is an ·inconvenience inseparable from the nature of the estate, and to which each must submit.   It is a legal incident like that which pertains to all joint tenants or tenants in common of an estate.   As such it is no more an incumbrance than the right of eminent domain, or the right to levy and collect taxes, which exist with regard to all estates.

2.   The plaintiff claims, in the next place, that the defendant, being an owner of an undivided interest in the ore estate, which estate exists in all the land belonging to the estate of John M. Holley, cannot sell his interest in a part only of the land without the concurrence of his co-tenants.

We think it must be conceded that the defendant was able to give just such a deed as he agreed to give, and just such a deed as the plaintiff agreed to receive.   The condition of the estate, and of the defendant's title thereto, was apparent upon the record.   Presumptively, therefore, whatever in-

firmity there is in such a deed was as well known to the plaintiff then as now. At least the difficulty of conveying such a title as he contracted for was apparent. We assume, however, that the plaintiff was not bound to advance his money and receive therefor a deed which conveyed only an imperfect or defective title. It would certainly seem to be a reasonable construction of the contract to hold that the parties contemplated that the plaintiff should receive a perfect title; and therefore that he should not be required to receive a defective one, and take the risk of being evicted, and, if evicted, to be compelled to resort to his remedy upon the covenants in the deed.

On the other hand, the defendant claims that when he was first informed of this objection, (which was not until after the time limited in the bond for paying the money and taking a deed had expired,) he arranged verbally with the other heirs to unite with him in the conveyance provided for in the bond, or in some other manner to ratify and confirm the same, and further claimed that at the time of the trial he was able and willing to make a good conveyance of said mineral right whenever the plaintiff should fulfill the bond on his part. It was certainly possible for the defendant to have given a good title in the manner indicated. *Hartford & Salisbury Ore Co.* v. *Miller*, 41 Conn., 112. If the plaintiff at the time had given this reason for not paying the money, we think it is quite clear that the difficulty might have been removed. We are unable to see why the defendant was not entitled to a reasonable opportunity to make a good title. He was not bound to do so until the money was paid or tendered, conditioned upon receiving a good title. When paid, or thus tendered, the plaintiff might then have demanded a perfect title. It is not enough to say that this objection was not known until afterwards. His knowledge, or want of knowledge, of the difficulty of giving a good title could not destroy or impair the defendant's rights. We conclude, therefore, that it was the plaintiff's duty to pay, or at least to be ready and willing to pay, the money according to the condition in the bond. His failure to do so is a fatal objection to his

right to recover for a breach of the covenants. In other words, the legal difficulty of conveying a good title is not *per se* a breach of the defendant's covenants.

The plaintiff further claims that he is entitled to recover upon the money counts.

The grounds of this claim are, that the defendant being unable to convey by reason of the insufficiency of his title, or by reason of an incumbrance upon the premises, the plaintiff may treat the contract as rescinded; that " both parties supposed when the bond was given that the defendant had and could convey a good title to the property therein described," and therefore the consideration was paid and received under a mutual mistake; and lastly, that the defendant, by his act of joining in the deed of August 11th, 1873, to Miller, will be deemed to have rescinded his contract, inasmuch as he thereby parted with a right which left his own title different from the title which he agreed to convey to the plaintiff.

We have no occasion to examine these several reasons for the purpose of determining whether this claim is well founded, for there is one fact in the case which, in its present aspect, effectually bars the plaintiff's right to claim that the contract has been abandoned or rescinded. By a reference to the record in the case of *The Hartford & Salisbury Ore Co.* v. *Miller*, which record is made a part of this case, it will appear that the plaintiff on the 17th day of October, 1870, caused the bond now in suit to be recorded in the Salisbury records, and at the time the report of the committee in that case was made, (December 18th, 1873,) still insisted on an equity right in the premises. It nowhere appears that the plaintiff has ever abandoned that right or claim; nor does it appear that whatever right in equity he acquired in the premises by recording his bond has ever been transferred or tendered to the defendant. On the contrary it remains upon record, a declaration to the whole world that he claims under it as an existing and outstanding contract, and operates as a cloud upon the defendant's title. Whatever rights, therefore, the plaintiff may have in respect to the consideration paid

under this contract, he is not now in a condition to enforce those rights, and will not be until he has done at least all in his power to place the defendant in *statu quo.*

We therefore advise the Superior Court to render judgment for the defendant.

In this opinion the other judges concurred.